GUIDRY, J.
|2The disabled victim of a motorcycle accident, through her curator, appeals a judgment denying claims for reimbursement of certain expenses from a fund established to pay medically-necessary expenses related to her injury.
FACTS AND PROCEDURAL HISTORY
While riding as a passenger on a motorcycle on June 13, 2005, Patricia Lathrop-Paulsell was involved in an accident, which caused her to sustain traumatic brain injuries that left her in a minimally-responsive, vegetative state. As a result of the injuries she sustained, a judgment of interdiction was entered against Patricia on February 14, 2006, whereby her mother, Juanita Christine Paulsell, was appointed her curator. Following her appointment as Patricia’s curator, Ms. Paulsell filed a petition for damages against various defendants, including the Louisiana Department of Transportation and Development (“DOTD”),[1] but the matter proceeded to trial solely against the DOTD. During the trial, Ms. Paulsell and the DOTD reached a settlement by which Ms. Paulsell “agreed to accept the sum of one million seven hundred fifty thousand ($1,750,-000.00) Dollars, in cash and one million two hundred fifty thousand ($1,250,000.00) Dollars, to be paid as incurred from the Future Medical Care Fund, in full and final settlement of all claims [Patricia] has against the defendant, [the DOTD].” The trial court signed a consent judgment incorporating the terms of the settlement agreement on April 6, 2009.
Less than two years later, on November 29, 2010, Ms. Paulsell filed a “Petition to Enforce Judgment,” contending that the *859 State of Louisiana, through the Office of Risk Management (ORM), had rejected certain expenses that she had submitted in accordance with the April 6, 2009 consent judgment. Therefore, Ms. |sPaulsell sought an order directing the ORM to disburse funds in accordance with the April 6, 2009 consent judgment. In response, the DOTD and the ORM filed an answer and exceptions pleading no cause of action, improper cumulation of actions, and prematurity. Thereafter, Ms. Paulsell filed a “Motion to Enforce Consent Judgment, for Declaratory Judgment and in Opposition to [Defendants’] Exceptions of Prematurity, Improper Cumulation and/or No Cause of Action and for Attorneys Fees.” By her motion, Ms. Paulsell again sought “enforcement” of the April 6, 2009 consent judgment. She also sought a declaratory ruling defining the term “related benefits” and declaring that she had the sole and exclusive right to determine what costs and expenses are to be submitted and paid for by the Future Medical Care Fund.[2]
A hearing on the various exceptions filed by the DOTD and the ORM and the motion filed by Ms. Paulsell was held on October 24, 2011. The trial court rendered judgment sustaining the objections of no cause of action, improper cumulation of actions, and lack of subject matter jurisdiction raised in the exceptions filed by the DOTD and the ORM. The trial court denied Ms. Paulsell’s motion to enforce consent judgment and for declaratory relief as moot. It is from this judgment that Ms. Paulsell now appeals, asserting that the trial court erred in sustaining the objections of lack of subject matter jurisdiction, no cause of action, and improper cu-mulation of actions to dismiss her petition to enforce judgment.
DISCUSSION
The April 6, 2009 consent decree rendered judgment against the DOTD “in the full sum of one million seven hundred fifty thousand ($1,750,000.00) Dollars, in cash and one million two hundred fifty thousand ($1,250,000.00) Dollars, to be paid as incurred from the Future Medical Care Fund with no legal and/or judicial |interest to accrue....” In conjunction with this award, the consent judgment further orders that “the amount paid for future medical expenses ... in the amount of one million two hundred fifty thousand ($1,250,000.00) Dollars, are to be paid as incurred from the Future Medical Care Fund, as authorized by LSA-R.S. 39:1533.2, and that said funds will be paid directly to the medical provider as said expenses are incurred pursuant to LSA-R.S. 13:5106(B)(3)(e).”
The Future Medical Care Fund, as established in La. R.S. 39:1533.2, consists of “such monies transferred or appropriated to the fund, for the purposes of funding medical care and related benefits that may be incurred subsequent to judgment rendered against the state or a state agency as provided by R.S. 13:5106 and as more specifically provided in R.S. 13:5106(B)(3)(c).” As for administration of the fund relative to personal injury claims against the state, La. R.S. 13:5106(B)(3)(c) provides:
In any suit for personal injury against the state or a state agency wherein the court pursuant to judgment determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the *860 court shall order that all medical care and related benefits incurred subsequent to judgment be paid from the Future Medical Care Fund as provided in R.S. 39:1533.2. Medical care and related benefits shall be paid directly to the provider as they are incurred. Nothing in this Subparagraph shall be construed to prevent the parties from entering into a settlement or compromise at any time whereby medical care and related benefits shall be provided but with the requirement that they shall be paid in accordance with this Subparagraph. [Emphasis added.]
The consent judgment rendered in this case complies with the provisions of La. R.S. 13:5106(B)(3)(c); therefore, Ms. Paul-sell is entitled to payment for all “medical care and related benefits” incurred on behalf of Patricia. Such “medical care and related benefits” are defined under La. R.S. 13:5106(D) to mean “all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services, and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services.” It is Ms. Paulsell’s |,^contention that she has submitted several claims for such “medical care and related benefits” for Patricia,[3] yet payment from the Future Medical Care Fund has not been authorized. In seeking redress for this failure, Ms. Paulsell revealed the additional issue of how and to whom should redress be sought.
In sustaining the various objections raised by the DOTD and the ORM, the trial court essentially found that Ms. Paul-sell’s complaints were administrative in nature, and as such, she first had to pursue administrative review prior to seeking judicial relief. Based on the record before us and the governing statutes, we disagree.

Subject Matter Jurisdiction

Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based on the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. Except as otherwise provided by the Louisiana Constitution, a district court shall have original jurisdiction of all civil and criminal matters. La. Const. art. V, § 16. The term “original jurisdiction” designates the adjudicative tribunal in which the initial adjudication is made. When the original jurisdiction allocated to the various courts is circumscribed by the Louisiana Constitution, the Legislature may not alter such jurisdiction by statute. Moore v. Roemer, 567 So.2d 75, 79 (La.1990).
Objections of failure to exhaust administrative remedies are usually premised on one of two grounds: (1) that exclusive original jurisdiction over [ 6certain subject matter is granted to an administrative agency[4]; or (2) that the legislature, by statutory enactment, has granted primary jurisdiction over certain subject matter to an administrative agency.[5] The grant of *861 exclusive jurisdiction of certain subject matters to an agency results in the subtraction of those matters from the district court’s jurisdiction. Jones v. Board of Ethics for Elected Officials, 96-2005, p. 3 (La.5/9/97), 694 So.2d 171, 172. The grant of original exclusive jurisdiction of designated subject matters to an agency can be contrasted with concurrent jurisdiction where the district court maintains original jurisdiction in certain matters at the same time that an agency or other court has been granted the same original jurisdiction. Louisiana Retailers Mutual Insurance Company v. DeRamus, 06-1427, p. 7 (La.App. 1st Cir.5/4/07), 960 So.2d 1048, 1052, writ denied, 07-1189 (La.9/21/07), 964 So.2d 336. The doctrine of “primary jurisdiction” is applicable when a court and state/governmental agency have concurrent jurisdiction over a claim or a dispute leading to potential conflicts on how such disputes are resolved. In such cases, a court, at its discretion, may dismiss the claims before it and defer the matter to the agency that has been granted primary jurisdiction over the claims. M.J. Farms, Ltd. v. Exxon Mobil Corporation, 07-2371, p. 5 n. 6 (La.7/1/08), 998 So.2d 16, 22 n. 6.
The distinction between primary jurisdiction and the exhaustion rule (exclusive jurisdiction) is that primary jurisdiction applies when concurrent jurisdiction exists between the courts and the administrative agency; and the exhaustion rule applies when exclusive jurisdiction exists in the administrative agency, and the courts have only appellate, as opposed to original, jurisdiction to review the agency’s decisions. Daily Advertiser v. Trans-La, a Division of Atmos Energy Corporation, 612 So.2d 7, 27 (La.1993). Stated another way, primary ^jurisdiction applies when a claim is originally cognizable in a court. The rule of exhaustion of administrative remedies applies when a claim is cognizable in the first instance only in an administrative agency. In exhaustion cases, judicial proceedings are premature until the administrative process has been completed, while in primary jurisdiction cases the judicial process is suspended pending referral to the administrative agency of issues, which under a regulatory scheme, are within the agency’s special competence. Daily Advertiser, 612 So.2d at 27 n. 31.
We have not discovered nor has the DOTD or the ORM identified any constitutional provision wherein exclusive original jurisdiction has been granted to an administrative agency over claims involving the Future Medical Care Fund. In the absence of constitutional authority expressly granting exclusive jurisdiction to an administrative agency or other tribunal, the district court cannot be held to lack' subject matter jurisdiction over Ms. Paulsell’s claims. See La. Const. art. V, § 16.
Still, the Legislature, of course, is free to enact procedures for initial submission of claims to an administrative agency for review, as long as the action of the administrative agency does not constitute the exercise of exclusive, original jurisdiction. See Pope v. State, 99-2559, p. 12 (La.6/29/01), 792 So.2d 713, 720. And in such cases where the regulatory scheme demonstrates that the subject matter has been legislatively determined to be within the special competence and expertise of an administrative agency, then a court should defer to the administrative agency and suspend the judicial process pending the deferral. See Daily Advertiser, 612 So.2d at 27 n. 31; Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719, 722 (La.1976).
In Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1215 the Louisiana Supreme Court held that “the determination of whether an administrative *862 | ^agency has exclusive statutory jurisdiction of an issue requires detailed analysis of the statutory provisions.” In that case, the Court -found that the initial adjudication of the plaintiffs’ dispute regarding their child’s entitlement to future medical care and related benefits under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41-1299.48, was vested in “the state agency or agencies having exclusive authority to pay, reject, settle, or monitor all claims and to administer the fund from which they must be paid.” Kelty, 633 So.2d at 1215. Looking at the applicable legislative scheme as presented in La. R.S. 40:1299.43(0 and La. R.S. 40:1299.44, the Court concluded that “the legislature clearly intended to eliminate all judicial power in initial decision making or supervision over medical and related care claims and to vest such exclusive jurisdiction in the agency legislatively assigned to administer the [Patients’ Compensation Fund], subject only to court review of the agency’s actions pursuant to well established principles of judicial review.” Kelty, 633 So.2d at 1218-19; see also Bijou v. Alton Ochsner Medical Foundation, 95-3074 (La.9/5/96), 679 So.2d 893, 898; and Louisiana Patient’s Compensation Fund Oversight Board v. Edwards, 39,149, pp. 6-7 (La.App.2d Cir.12/15/04), 891 So.2d 85, 89
Specifically, La. R.S. 40:1299.43 provides in pertinent part:
C. Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits that will be incurred after the date of the response to the special interrogatory by the jury or the court’s finding or a settlement is reached between a patient and the patient’s compensation fund in which the provision of medical care and related benefits that will be incurred after the date of settlement is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient’s compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider’s malpractice unless the patient refuses to allow them to be furnished.
D. Payments for medical care and related benefits shall be paid by the patient’s compensation fund without regard to the five hundred thousand dollar limitation imposed in R.S. 40:1299.42.
RE. (1) The district court from which final judgment issues shall have continuing jurisdiction in cases where medical care and related benefits are determined to be needed by the patient.
(2) The court shall award reasonable attorney fees to the claimant’s attorney if the court finds that the patient’s compensation fund unreasonably fails to pay for medical care within thirty days after submission of a claim for payment of such benefits.
Further, La. R.S. 40:1299.44(D)(2)(a) and (3) respectively provide:
(2)(a) The board shall be responsible, and have full authority under law, for the management, administration, operation and defense of the fund in accordance with the provisions of this Part.
[[Image here]]
(3) The board shall have authority, in accordance with applicable provisions of the Administrative Procedure Act, to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed on the board by this Part.
A review of La. R.S. 39:1533.2 and La. 13:5106 does not reveal a similar regulatory scheme as outlined under the medical malpractice act. Louisiana Revised Stat *863 utes 13:5106(B)(8)(c) simply provides that “the court shall order that all medical care and related benefits incurred subsequent to judgment be paid from the Future Medical Care Fund as provided in R.S. 39:1533.2. Medical care and related benefits shall be paid directly to the provider as they are incurred.” Louisiana Revised Statutes 39:1533.2(B) states that “[t]he fund shall be administered by the treasurer on behalf of the office of risk management for the benefit of claimants suing for personal injury who are entitled to medical care and related benefits that may be incurred subsequent to judgment. Except for costs or expenses of administration, this fund shall be used only for payment of losses associated with such claims.”
According to La. R.S. 39:1535, the ORM has the following, non-exclusive duties and responsibilities:
A. It is the responsibility of the commissioner of administration through the office of risk management to manage all state insurance | ^covering property and liability exposure, through commercial underwriters or by self-insuring. Personnel benefits and group health and life coverage are excepted. It is also the responsibility of the commissioner of administration through the office of risk management to manage all tort claims made against the state or any state agency whether or not covered by the Self-Insurance Fund.
B. The duties and responsibilities of the office of risk management shall include but not be limited to the following:
(1) Administration of the state’s risk management program.
(2) Recommendation to the legislature of the amounts of premium charges assessable to the various state agencies.
(3) Provision of claim adjustment services through either employees or contractual services.
(4) Assist its counsel in the defense of claims against the state.
(5) Investigation of claims falling within the scope of this Chapter.
(6) Negotiation, compromise, and settlement of all claims against the state or state agencies covered by the Self-Insurance Fund, and all tort claims against the state or state agencies whether or not covered by the Self-Insurance Fund; however, all such compromises and settlements shall be made in return for a complete release and waiver of all further liability of the state, state agencies, and of the officers, officials, and employees covered by R.S. 13:5108.2. No settlement over twenty-five thousand dollars per claimant shall be made without the approval of the attorney general’s office.
As observed by the Louisiana Supreme Court in Hampton v. Greenfield, 618 So.2d 859, 863-64 (La.1993), missing from the statutory scheme outlined in La. R.S. 39:1527-1547 “is clear authority requiring the Office of Risk Management to pay final judgments against the state.” As we find there is no established administrative remedy in place that applies to the claim for future medical care benefits asserted by Ms. Paulsell, we conclude that the trial court erred in holding that Ms. Paulsell must pursue unavailable administrative remedies prior to seeking judicial relief. See Cheron v. LCS Corrections Services, Inc., 04-0703, p. 15 (La.1/19/05), 891 So.2d 1250, 1259-60; compare Steeg, 329 So.2d at 722; Louisiana Patient’s Compensation Fund Oversight Board, 39,149 at pp. 6-7, 891 So.2d at 89. We therefore reverse that portion of the trial court’s judgment sustaining the | n declinatory exception raising the objection of lack of subject matter jurisdiction. Consequently, as we have found that no available administrative remedies exist for Ms. Paulsell to pursue, we *864 likewise reverse that portion of the trial court’s judgment sustaining the dilatory exception raising the objection of improper cumulation of actions.
Finally, we must consider the correctness of that portion of the trial court’s judgment sustaining the peremptory exception asserting no cause of action as to the DOTD.[6] The DOTD contends that the trial court correctly found that Ms. Paul-sell had no cause of action against it, because the ORM is the administrative agency that receives, evaluates and rules upon claims for payment from the Future Medical Care Fund.
A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant. State, Division of Administration, Office of Facility Planning and Control v. Infinity Surety Agency, L.L.C., 10-2264, p. 8 (La.5/10/11), 63 So.3d 940, 945. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. The exception is triable solely on the face of the petition and any attached documents. Baton Rouge Computer Sales, Inc. v. Miller-Conrad, 99-1200, p. 5 (La.App. 1st Cir 5/23/00), 767 So.2d 763, 765. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief. State, Division of Administration, Office of Facility Planning and Control, 10-2264 at p. 9, 63 So.3d at 946.
In the petition to enforce judgment, Ms. Paulsell alleged:
112-L
During the trial on the merits of the claim of Patricia Paulsell-Lathrop on December 8, 2008, the [DOTD] and the Plaintiff agreed upon a settlement to compromise and settle the claim, thereby terminating the trial and bringing an end to the litigation.
2.
As part of the terms of the settlement, the [DOTD] agreed to and did enter into a Consent Judgment ... attached to this Petition as Exhibit A.
3.
The terms of the settlement included payment of $1,250,000.00 ‘as incurred from the Future Medical Care Fund’ and this Court duly ordered the [DOTD] to make payment of these funds ‘as incurred’ from the Future Medical Care Fund.
The consent judgment at issue in this matter specifically recites “that there be judgment herein ... against the defendant, [the DOTD]-” While the judgment further recites that the obligation for future medical expenses in the amount of $1,250,000.00 is “to be paid as incurred from the Future Medical Care Fund,” we do not construe this language as releasing the DOTD from liability for this award under the judgment. Instead, the language clearly conveys an obligation by the DOTD to see that the terms of the judgment are fulfilled.[7] Thus, we find that the *865 trial court also erred in sustaining the peremptory exception asserting no cause of action as to the DOTD.
CONCLUSION
Accordingly, for the foregoing reasons, we find that the trial court erred in sustaining the objections of lack of subject matter jurisdiction, improper cumulation, and no cause of action to dismiss Ms. Paulsell’s petition to enforce judgment. We reverse the judgment and remand this matter to the trial court for | ^further proceedings. All costs of this appeal, in the amount of $2,297.01, are assessed to the State of Louisiana, through the Department of Transportation and Development and the Division of Administration, Office of Risk Management.
REVERSED AND REMANDED.

. In the petition, Ms. Paulsell alleged that the June 13, 2005 accident was caused in part by defective road conditions.

. The DOTD and the ORM filed a separate pleading again excepting to Ms. Paulsell's petition on the grounds previously raised, but also added the objection of lack of subject matter jurisdiction.

.In the petition to enforce judgment, Ms. Paulsell generally alleged that "certain expenses” presented to ORM were rejected and specifically alleged that "certain future expenses necessitated by the care and treatment of Patricia Paulsell-Lathrop, such as the purchase of a handicap accessible van and living accommodations in lieu of nursing home or skill nursing care were discussed and also rejected for payment or reimbursement.

. See e.g. La. Const. art. IV, § 21; art. V, §§ 15, 16, 18 & 20; and art. X, § 12; see also Pope v. State, 99-2559, pp. 7-8 n. 11 (La.6/29/01), 792 So.2d 713, 717 n. 11.

. See e.g. La. R.S. 15:1171-1179; La. R.S. 22:2191-2208; La. R.S. 30:12;

. Objections of no cause of action and prematurity raised by the ORM were "denied as moot” in the judgment.

. And while in the answer to the petition to enforce judgment, the ORM “admits that it has an obligation under the Consent Judgment to pay from the Future Medical Care Fund the future medical expenses of [Patricia] ... up to $1,250,000.00, pursuant to La. R.S. 13:5106 and 39:1533.2,” this assumption of liability by the ORM does not operate to relieve the DOTD of liability. See La. C.C. arts. 1821 and 1823.