# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #004

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **28th day of January, 2015**, are as follows:

**BY WEIMER, J.**:

2014-C -1127    MACK ENERGY CO., ET AL. v. EXPERT OIL AND GAS, L.L.C. (Parish of St. Tammany)

Retired Judge Hillary J. Crain, Assigned as Justice ad hoc, sitting for Justice Jefferson D. Hughes, III, recused.
Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Justice Jeffrey P. Victory, for oral argument. He now sits as an elected Associate Justice at the time this opinion is rendered.

Accordingly, the rulings of the lower courts, by which the arbitration award is confirmed, are hereby AFFIRMED.

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-1127

## MACK ENERGY CO., ET AL.

## VERSUS

## EXPERT OIL AND GAS, L.L.C.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT,*
*PARISH OF ST. TAMMANY*

**WEIMER**, Justice.[1]

We granted a writ to determine whether an accountant, serving as an arbitrator, exceeded his arbitral authority.

Based on an agreement, an oilfield operator was authorized to charge certain costs against revenues prior to paying the oilfield owners. After a dispute arose, an auditor examined the oilfield operator's costs charged to the oilfield owners and assigned approximately $978,000 as being unsubstantiated and, therefore, impermissibly charged to the owners by the operator. The arbitrator reached a different conclusion regarding what charges were permissible and awarded the owners approximately $1.6 million.

The arbitrator's conclusion was significantly based on employment documents provided by the operator during the arbitration. Those employment documents were

---

[1] Retired Judge Hillary J. Crain, assigned as Justice *ad hoc*, sitting for Justice Jefferson D. Hughes, III, recused.

Judge Scott J. Crichton, assigned as Justice ad hoc, sitting for Victory, J. for oral argument. He sits as an elected Justice at the time this opinion is rendered.

not entered as an exhibit during the arbitration, nor were the documents made available to the parties for review. The oilfield owners were, nevertheless, apparently satisfied with the arbitration's final outcome, and the owners brought an action in the district court to confirm the award. The oilfield operator, however, moved to vacate the award. The operator argued that the arbitrator improperly considered the employment documents and that the arbitration was limited in scope by the auditor's findings that the unsubstantiated charges totaled approximately $978,000. The district court confirmed the award and denied the operator's motion. The court of appeal affirmed, with one judge dissenting.

Initially, the arbitration proceedings and alleged disproportionate award appeared to approach the limits of Louisiana's generally permissive arbitration laws; therefore, this court granted a writ of review. After oral argument and with the benefit of a full record, however, we find the arbitrator acted pursuant to the authority lawfully and contractually vested in him by the parties. Thus, for the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

The owners of the oilfield's mineral rights are Mack Energy Co., Knight Resources, LLC, Big Sky Operating Companies, Inc., and Duplantis Resources, LLC (collectively "Mack Energy"). In 2007, Mack Energy executed two agreements with ExPert Oil & Gas, LLC ("ExPert") to develop Mack Energy's mineral rights in the Lake Salvador Field in Jefferson and St. Charles Parishes. The "Participation Agreement" indicated that Mack Energy would be given "the authority and responsibility to act as the prospect developer for" the Lake Salvador Field and that ExPert would be the operator. The Participation Agreement also provided details for the payout of any successful wells and that the costs of any mineral operations would

2

be paid or reimbursed to ExPert as the operator. The other agreement was an "Operating Agreement," which attached an accounting procedure referred to by the parties as "COPAS," the acronym for the Council of Petroleum Accountants Societies. Under COPAS procedures, a "Joint Account" was established as a means of "showing the charges paid and credits received" for the oilfield operations. The COPAS procedures also gave Mack Energy the right to have the joint account audited.

Mack Energy invoked the right under COPAS to have an audit from the inception of the joint account through December 2010. Accountant Dan Huey served as the lead auditor and examined expenditures charged to the joint account totaling nearly $37 million. In his report, Mr. Huey indicated that not all expenditures charged by ExPert could be justified under the standard of "reasonableness and propriety" by supporting documentation, and he identified such expenditures as "exceptions." Mr. Huey's report indicated that the "[g]ross exceptions totaled $1,437,828.97 with additional unresolved exceptions that are to be determined after response by Operator."

Neither Mack Energy nor ExPert agreed with Mr. Huey's report. Pursuant to the Participation Agreement, Mack Energy and ExPert submitted their dispute to a mediator. Through mediation, of 106 exceptions noted in the audit report, the parties resolved 54 exceptions. Although some exceptions had been resolved to the parties' mutual satisfaction, Mack Energy and ExPert continued to dispute the proper resolution of the joint account after mediation.

In fact, Mack Energy sought to terminate ExPert's role as operator. That issue became the topic of a separate arbitration, which concluded with a ruling maintaining ExPert as operator. However, as far as the joint account was concerned, Mack Energy again invoked rights described in the Participation Agreement and called for

3

the arbitration at issue in this case. Mack Energy submitted a document to ExPert captioned "Arbitration Claim," which recited the attempted mediation and its results relative to the audit report: "Fifty-two (52) audit exceptions, totaling $977,598.44, remained open at the end of the mediation."

The parties executed a "Procedural Agreement," describing how certain aspects of the arbitration, such as discovery and evidence, would be handled by an arbitrator. The Procedural Agreement also stated that the arbitrator would resolve the issues that were "formally submitted" and indicated that the parties had already jointly selected an arbitrator. The selected arbitrator was an accountant and a member of the Council of Petroleum Accountants Societies, the same organization that promulgated the COPAS procedures to which the parties were bound by the Operating Agreement. During the hearing, the arbitrator considered whether ExPert was required to provide employment documents relating to charges ExPert made to the joint account. The charges had been made for services rendered by employees of ExPert E & P Consultants, LLC, an entity affiliated with ExPert.

ExPert and ExPert Consultants had the same chief financial officer (CFO), Michael Ledet. Moreover, the Participation Agreement was written on letterhead listing both of the ExPert business entities. Notwithstanding the obvious connections between the two entities, during the arbitration, ExPert took the position that charges to the joint account for services from ExPert Consultants were the services of a third party for which ExPert had no obligation to provide documents during the arbitration. After a lengthy debate by the parties' counsel and testimony by the CFO admitting that the auditor had requested the employment documents for the audit, but the CFO refused to provide those documents, the arbitrator ordered ExPert to produce the employment documents.

The debate over the production of the employment documents evolved along procedural lines, with the parties taking greatly disparate positions. The range of substantive reasons for the arbitrator's potential use of the employment documents appeared to be well-understood by the parties. Under COPAS, when the operator charges the joint account for services of an entity affiliated with the operator, one of two rates is permissible. In such a situation, the auditor noted in his report that the operator was allowed to charge either "rates commensurate with costs of ownership and operation" or "commercial[ly] prevailing rates … less 20%." Moreover, the operator is allowed to charge only a flat rate for overhead expenses, such as "administrative, supervision, [and] office services." Thus, substantively, the arbitrator determined the employment documents were necessary to guide his ultimate resolution of the parties' accounting disputes.

After the hearing, the arbitrator ordered ExPert to credit the joint account in the amount of $1,596,269.15. Of this credit, the arbitrator found ExPert had charged $537,579.36 for services of ExPert Consultants, which were "clearly administrative and not chargeable." The arbitrator explained this finding was supported by the employment records, which had been "denied the auditors in the expenditure[s] audit" and which had been the subject of the lengthy dispute during arbitration, culminating in the arbitrator's order to provide the records to him for evaluation.

Mack Energy initiated a proceeding in the district court to have the arbitration award confirmed. ExPert responded by moving to have the award vacated. After briefing and oral argument by the parties, the district court confirmed the award and ordered ExPert to pay interest from the date of Mack Energy's filing to confirm the

award.[2]  ExPert sought a new trial regarding the interest award only, arguing that interest could be awarded only from the date the district court confirmed the award. The district court denied ExPert's motion for new trial.  The district court's judgment was affirmed on appeal by a majority vote.  **Mack Energy Co. v. Expert Oil and Gas, L.L.C.**, 13-0182 (La.App. 1 Cir. 1/17/14) (unpub'd).[3]

This court granted a writ to consider ExPert's arguments that the arbitrator exceeded his authority in ordering the employment documents produced and further exceeded his authority in awarding Mack Energy more than the value of the exceptions noted in the audit report that remained unresolved after the pre-arbitration mediation. **Mack Energy Co. v. Expert Oil and Gas, L.L.C.**, 14-1127 (La. 10/3/14), 149 So.3d 276.

## LAW AND ANALYSIS

Aside from exceptions not applicable here, arbitration is the result of two or more parties' choice to have a dispute resolved by person(s) outside the judicial system.  See La. C.C. art. 3099.[4]  The ultimate resolution of the dispute is intended to be binding on the parties who have chosen arbitration.  See *Id.*  The choice to arbitrate is expressed contractually, and the legislature has dictated that the choice itself to arbitrate is also binding on the parties.  See La. R.S. 9:4201 ("A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an

---

[2]  ExPert's motion to vacate was denied.

[3]  The court of appeal granted a rehearing to consider ExPert's argument that the scope of arbitration was more limited than initially found; the court rejected ExPert's argument and again affirmed. **Mack Energy Co. v. Expert Oil and Gas, L.L.C.**, 13-0182 (La.App. 1 Cir. 5/2/14) (unpub'd).

[4]  Exceptions to the voluntary choice to resolve disputes by arbitration may arise in a certain "court-ordered or … court-annexed alternative dispute resolution program." 1A FRANK L. MARAIST, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE-SPECIAL PROCEEDINGS § 13.2, p. 224 (2005).

agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

The Civil Code refers to an agreement to arbitrate as a "submission." See La. C.C. art. 3099. Regarding the subject matter of arbitration, the Civil Code indicates that "[p]arties may submit either all their differences, or only some of them in particular; and likewise they may submit to arbitration … generally every thing which they are concerned in, or which they may dispose of." La. C.C. art. 3102. The Code again refers to the agreed-upon "submission" to delineate an arbitrator's authority: "The power of arbitrators is limited to what is explained in the submission." La. C.C. art. 3104. Furthermore, the parties' Procedural Agreement states: "[the] issues to be decided by the Arbitrator shall be those issues formally submitted to the Arbitrator."

Our review of the arbitration here and of the resulting award is guided by the following principles. This court ruled that "[b]ecause of the strong public policy favoring arbitration, arbitration awards are presumed to be valid." **National Tea Co. v. Richmond**, 548 So.2d 930, 932 (La. 1989). Moreover, "[e]rrors of fact or law do not invalidate a fair and honest arbitration award," (*id.*) and "[t]he burden of proof rests upon the party attacking the award." **Firmin v. Garber**, 353 So.2d 975, 978 (La. 1977). Such deference to arbitral awards is consistent with the longstanding recognition that arbitration is intended to "speedily … determine disputes and controversies by quasi judicial means, thus avoiding the formalities, the delay, the expense, and the vexation of ordinary litigation." **Housing Authority of New**

**Orleans v. Henry Ericsson Co.**, 197 La. 732, 745, 2 So.2d 195, 199 (1941), *quoting*

3 AMERICAN JURISPRUDENCE: ARBITRATION AND AWARD, p. 830, § 2.

In La. R.S. 9:4210, the legislature provided the following grounds for vacating an arbitration award:

A. Where the award was procured by corruption, fraud, or undue means.

B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.

C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.

D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

ExPert relies on La. R.S. 9:4210(D) in each of its two main arguments regarding the arbitrator's exercise of power. ExPert argues the award of $1.6 million was outside the scope of the arbitration and that the arbitrator improperly relied on employment documents that had not been submitted as an exhibit during the arbitration. To find in ExPert's favor on the scope of the award would moot our consideration of ExPert's argument regarding the employment documents. Therefore, we first address the argument that the quantum of the ultimate award was beyond the scope of the arbitrator's authority.

Quantum and Scope

ExPert suggests that there is no factual support for an award of approximately $1.6 million. Such is not the case. The arbitration award explains that the approximate total of $1.6 million is comprised of various components and further indicates factual findings supporting these components. Being informed of the ultimate amount awarded is sufficient, for our present purposes, to properly focus our review. In reviewing arbitral awards challenged under La. R.S. 9:4210(D), it is not the role of the

judiciary to correct errors of fact or law; therefore, the calculation of damages is beyond our review. See **National Tea Co.**, 548 So.2d at 932; **Louisiana Physician Corp. v. Larrison Family Health Center, L.L.C.**, 03-1721, pp. 2-4 (La.App. 3 Cir. 4/7/04), 870 So.2d 575, 577-78. Thus, we are not revisiting how or why the arbitrator arrived at an award of approximately $1.6 million. Instead, we examine whether the arbitrator had the contractual authority to issue that award.

The Procedural Agreement, ExPert correctly notes, describes many of the arbitrator's powers. The Procedural Agreement itself, however, does not completely define the arbitration's scope; rather, the scope is to be more specifically defined elsewhere as the Procedural Agreement states: "[t]he issues to be decided by the Arbitrator shall be those issues formally submitted to the Arbitrator in accordance with the provisions of the Contract."

ExPert argues that Mack Energy formally submitted the exceptions identified in the audit report to arbitration thereby limiting the award to a maximum of approximately $978,000. As we recounted earlier, the audit report identified expenditure exceptions, *i.e.*, charges lacking sufficient supporting documentation or other justification. ExPert also points out that, after mediation and during the arbitration, the parties had resolved a number of those exceptions. Subtracting the amount of the resolved exceptions from the auditor's total is how ExPert arrives at the $978,000 figure, which ExPert argues limits the scope of the arbitrator's authority to render an award.

To prevail with this line of argument, ExPert must show that the parties contractually bound themselves to limit the arbitration to the exceptions identified in the audit report and likewise bound themselves to the corresponding values assigned in the audit report to each exception. See **AT&T Technologies, Inc. v.**

10

**Communication Workers of America**, 475 U.S. 643, 648-49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.").[5] Indeed, ExPert points to the Arbitration Claim, apparently drafted by Mack Energy, and specifically to this recitation: "Fifty-two (52) audit exceptions, totaling $977,598.44, remained open at the end of the mediation."

If the Arbitration Claim had recited only the language just quoted, we might agree with ExPert that the arbitration's scope was limited to an award of $977,598.44. However, it is important to note that the Arbitration Claim continued: "The only disputes to be arbitrated in this arbitration are (i) a resolution of exceptions raised in an audit of the Joint Account and (ii) the payment of credits to the Joint Account based on the evidence to be submitted in the arbitration."

From the excerpt last quoted, we find that the scope of arbitration was twofold. First, the parties were to resolve the expenditure exceptions identified in the audit report. Second, the parties were to resolve any credit which could be established during the arbitration. To hold to the contrary, as ExPert essentially urges we should do so by finding the scope of arbitration was limited to the exceptions and amounts identified in the audit report, would render the second enumerated dispute in the Arbitration Claim meaningless.[6] Here, ExPert failed to demonstrate why this court

---

[5] Although we apply Louisiana law in this case, we draw from federal jurisprudence because federal arbitration law and Louisiana arbitration law "are almost identical in substance." **FIA Card Service, N.A. v. Weaver**, 10-1372, p. 4 (La. 3/15/11), 62 So.3d 709, 712 (internal quotation omitted).

[6] In a reviewing a contract, if possible, courts are required to give meaning to each provision. See La. C.C. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); cf. **Tresch v. Kilgore**, 03-0035, p. 4 (La.App. 1 Cir. 11/7/03), 868 So.2d 91, 93 ("Ordinary contract principles govern the question of who is bound by an arbitration agreement, and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit.").

should ignore the provision identified within the Arbitration Claim as a second enumerated dispute to be decided in arbitration.[7]

The second enumerated dispute in the Arbitration Claim empowered the arbitrator to determine the "payment of credits to the Joint Account." We find additional confirmation within the same Arbitration Claim, that the scope of the arbitrator's authority was untethered from the earlier audit. Specifically, the Arbitration Claim presented this request: "Mack Entergy … ask that … the Arbitrator make the following findings: … 3. Based on the evidence submitted in the arbitration, credits to the Joint Account as determined by the Arbitrator are due and payable by [ExPert]."[8] (Emphasis added.)

We determine, therefore, that the arbitrator acted within the scope of authority contractually conferred by the parties when the arbitrator reached his own conclusions regarding what charges to the joint account were permissible and awarded a corresponding amount of credits to be paid by ExPert. Having found that the quantum of the arbitrator's award was within the scope of the arbitrator's authority, we likewise find the arbitrator brought about a "final, and definite award upon the subject matter submitted" as required by La. R.S. 9:4210(D), and our review of the quantum of the award for compliance with the scope of the arbitration is complete.

---

[7] We also note that although the burden is high, a remedy for "compelling an arbitration … when the matter in question is inarbitral" is to seek injunctive relief from a court. MARAIST, *supra* § 13.5 at 231-32. ExPert did not seek such a remedy here.

[8] The Arbitration Claim provides us with the most direct statement indicating that the arbitrator was untethered to the auditor's findings, but we note that the Procedural Agreement appears to provide another statement why the arbitrator was not bound to the auditor's findings. Specifically, the Procedural Agreement described "that the issues to be determined in this arbitration proceeding, includ[ed], inter alia, the interpretation of the Contract, and all matters related thereto or arising thereunder shall be governed by and decided based upon the substantive law of Louisiana."

Scope of Production and Consideration of Documents

ExPert argues that the arbitrator exceeded his authority in ordering the production of employment documents and then considering those documents when rendering the award. ExPert's primary argument, is that the order to produce the documents was untimely.

To support its claim that the order was untimely, ExPert presents an elaborate comparison of the arbitration proceeding with litigation, complete with discovery deadlines and exhibit lists. ExPert urges that because Mack Energy did not request the employment documents within the discovery deadline, the opportunity to seek those documents had passed. Similarly, ExPert contends that because Mack Energy did not include the documents on the pre-arbitration exhibit list, Mack Energy was barred from seeking them during the arbitration. The Procedural Agreement, ExPert points out, established a discovery schedule and required "final exhibit lists and copies of all exhibits."

This was no discovery dispute, however, nor can the issue be resolved by resorting to the Procedural Agreement's requirement for a final exhibit list. The order to produce the documents was issued by the arbitrator during the arbitration. This court must, therefore, determine the source of the arbitrator's authority, if any, to order the production of documents during arbitration.[9]  Louisiana's Binding

---

[9] Even if we were reviewing a judicial proceeding, ExPert's argument implies that courts are rigidly bound to adhere to discovery deadlines and witness lists. Carrying ExPert's comparison of this arbitration to a judicial proceeding one step further, we see ExPert raises legal issues for which it has offered no answer. Assuming for the sake of argument we were to apply the same standards of review to this arbitration as we would to a judicial proceeding, we note ExPert does not address why the admission of documents not included on an exhibit list and produced after a discovery deadline would not permissibly fall within the exercise of the tribunal's discretion. See, e.g., **First Bank & Trust v. Tedesco**, 12-0774, p. 14 (La.App. 4 Cir. 12/5/12), 106 So.3d 653, 662, writ denied, 13-0021 (La. 2/22/13), 108 So.3d 774 ("We find that the trial court acted fairly and reasonably by admitting all the evidence produced by the parties after the discovery deadline.").

We similarly reject as inapposite the case of **Southgate Penthouses, LLC v. Mapp Const.**, 12-1242

13

Arbitration Law, in La. R.S. 9:4206(C)(1), plainly authorizes an arbitrator to order the production of documents during an arbitration: "The parties to the arbitration may offer evidence as is relevant and material to the dispute and <u>shall produce evidence as the arbitrator may deem necessary</u> to an understanding and determination of the dispute." (Emphasis added.)

ExPert makes much over its contention that Mack Energy asked the arbitrator to issue the production order, in an apparent effort to again shift the dispute about whether production was required away from the ambit of La. R.S. 9:4206, and place the dispute within the scope of discovery and the requirement for a final exhibit list. Yet, ExPert provides no legal support for drawing a distinction between an order issued at the behest of a party and an order originating solely as the arbitrator's own idea. We find no such distinction drawn within La. R.S. 9:4206, and to fully evaluate ExPert's argument, we recall the principle that "[w]ords and phrases shall be read with their context." La. R.S. 1:3. Within La. R.S. 9:4206, the authority given to the arbitrator to order the "produc[tion] of evidence as the arbitrator may deem necessary" is expressed within the context that "[s]trict conformity to the Code of Evidence shall not be required, except for laws pertaining to testimonial privileges." <u>See</u> La. R.S. 9:4206(C)(1). Contained within the Code of Evidence are provisions governing matters such as "the admissibility of evidence." <u>See</u> La. C.E. art. 104(A). This context of freeing an arbitration from the formalities of the Code of Evidence further convinces us that the legislature intended no distinction or formality that would limit

_____

(La.App. 1 Cir. 4/26/13), 2013 WL 1790994 (unpub'd), <u>writs denied</u>, 13-1217, 13-1906 (La. 9/13/13) 120 So.3d 700, 705, on which ExPert heavily relies. In **Southgate**, the court vacated an award because the arbitral panel "violated its own scheduling order." *Id.*, p. 7. The violation the court cited, however, did not concern the production of documents, but rather allowing the claimant to bring a new "contractual claim against Southern States after the deadline for doing so in the scheduling order had expired." *Id.*

an arbitrator's power to order the production of documents to only the situation when the idea for the order originated from the arbitrator. In light of this context, we find ExPert would have us impose a formality upon the arbitrator's ability to order the production of documents for the arbitrator's consideration, where such formality has been rejected by the legislature.

Aside from the statutory authority to order the documents to be produced, we find the following contractual basis within the Procedural Agreement, which is similar in substance to La. R.S. 9:4206: "The Arbitrator is not required to apply the rules of evidence used in judicial proceedings, but may do so if deemed appropriate." Therefore, we find that the arbitrator had the authority pursuant to La. R.S. 9:4206 and pursuant to the parties' Procedural Agreement to order the production of the employment records during the arbitration for the arbitrator's consideration of the merits of the dispute.[10] See **Firmin**, 353 So.2d at 977 ("The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action.").[11]

---

[10] Although not mentioned by either party, we note that the Procedural Agreement allows "all evidence, documents, depositions and testimony in the previous arbitration between the parties shall be available for use by any party for purposes related to this arbitration without being in violation of any Protective Orders issued in the previous arbitration. The admissibility of any such evidence will be determined by the arbitrator herein." The arbitrator in the instant matter noted that "[w]hile timesheets were denied the auditors in the expenditure audit, they were provided during the previously cited arbitration effort." ExPert denies that the documents at issue "were requested by Mack [Energy] in the [earlier] arbitration or ordered to be produced by [the arbitrator in the earlier matter (emphasis omitted)]," but ExPert does not explain the basis for the quoted remarks from the arbitrator's decision in the present matter. If the arbitrator in the present matter was discussing the same documents at issue in the instant case, and those documents had in fact been produced in the earlier arbitration, then yet another contractual basis existed for the arbitrator to order their admission.

[11] In light of the legal principles cited, it is unnecessary for us to delve further in the record to ascertain whether the arbitrator had justification to order documents to be produced during the arbitration. For completeness of the narrative of this case, we note the arbitrator stated the following justifications:

> Now, based on Mr. Huey's testimony, he was denied the opportunity to obtain those [documents].

To reiterate, the introduction of evidence, not the formal designation of evidence as an exhibit, was the contractual threshold for considering evidence to resolve the parties' dispute. We have found 70 pages in the transcript of the arbitration proceeding culminating in the arbitrator's order for the documents to be produced. Furthermore, we have already found the parties' discussion and ultimately the arbitrator's order satisfied the parties' contractual threshold for introduction of the documents in the record. However, we also address why the arbitrator ordered the documents to be produced to him and not included as a formal exhibit, because the record reveals additional contractual support for the arbitrator's order.

When objecting to the arbitrator's indication that the documents must be produced, ExPert made much of the fact that the documents were employment documents and that employment documents had only been produced in the prior arbitration after the issuance of a protective order. Apparently, ExPert's concern was that the employment documents contained employees' salary information. When ordering the documents produced only to him, the arbitrator seemed sympathetic to that concern, indicating:

> I'd like to have these names presented and I would like to have that [payroll] information provided only to me.
> . . . .

---

Now, obviously that affected his report and it affected everything that's taken place since that time. …

But I still get back to the point that those were critical documents with regard to doing the job that Mr. Huey was asked to perform. And I know from my prior experience that that's solid grounds.

And while I understand that, yes, we're real late in the game, but I think that those documents should have been provided. If they were not provided and were or were not requested, going forward past Mr. Huey's presence in your office, Mr. Ledet, I think they should have been and I think they should be now.

And I don't plan on entering that as an exhibit. If you want to consider that aside information for the arbitrator, I don't know the legal terms to label it beyond that, but that's the way I view it.

The arbitrator's remarks remind us that the parties' Procedural Agreement indeed indicated that "[t]he conduct of the hearing shall be informal." Recalling also that the arbitrator was not an attorney, but an accountant, who expressed he was unaware of "the legal terms" for keeping the documents confidential, it appears the arbitrator was attempting to fashion something akin to a protective order or an order that the documents be filed under seal. The parties' Procedural Agreement incorporated by reference the Code of Ethics for Arbitrators in Commercial Disputes. Canon I(E) of that Code indicates: "When an arbitrator's authority is derived from the agreement of the parties, an arbitrator should neither exceed that authority nor do less than is required to exercise that authority completely." The comments to Canon I further explain that the arbitrator is empowered to "make interim rulings, and otherwise control or direct the arbitration. These activities are integral parts of an arbitration." Therefore, we find that the arbitrator was contractually empowered to issue an order by which the employment documents would be kept confidential.[12]

ExPert makes another related argument about the arbitrator failing to adhere to formalities. According to ExPert, the arbitrator could not consider the employment documents when rendering an award because the documents were not introduced as an exhibit. Our initial observation about this argument is that ExPert does not point to a contractual definition of the arbitral record or, more importantly, to a contractual or other legal requirement limiting the arbitrator's consideration to only documents submitted as exhibits within the arbitral record. We note that the Procedural

---

[12] Recalling that Mack Energy did not object to not seeing the documents, nothing in this opinion should be construed to address the situation where an opposing party has not been given access to documents that an arbitrator has ordered to be produced directly to the arbitrator.

Agreement requires a court reporter, but only to "transcribe the hearing daily if live testimony is presented." Receiving and certifying exhibits as part of the arbitral record is not described as one of the court reporter's obligations. Therefore, even though ExPert attempts to equate submitting evidence in the form of an exhibit with introducing evidence in the arbitral record, we find no basis to require the introduction of evidence in the form of an exhibit as a prerequisite for introducing evidence into the arbitral record.

As evidence need not be submitted in exhibit form in order to be part of the arbitral record, there is no doubt the documents were properly introduced into the record. Nor were the documents introduced without adequate notice to ExPert. Indeed, there are approximately 70 pages of transcript devoted to debating the issue of whether ExPert needed to provide the employment records. The arbitrator then ordered the documents be produced to him pursuant to his contractual power and as authorized by statute, and the documents were accordingly produced.

Finally, we perceive ExPert's argument against the arbitrator considering the employment documents to be merely an effort to revisit the merits of the decision under the guise of the arbitrator failing to adhere to a formality. We reject this argument, finding the following oft-cited principle applies: "An appellant may not actually seek review of the merits of the case by couching its argument in terms of arbitrators having exceeded their authority." **Gilbert v. Robert Angel Builder, Inc.**, 45,184, p. 6 (La.App. 2 Cir. 4/14/10), 34 So.3d 1109, 1113-14, *citing* **Wittich v. Wittich**, 06-418, p. 7 (La.App. 5 Cir. 11/28/06), 948 So.2d 195, 198, and **P & M Equities, Inc. v. Latter & Blum, Inc.**, 96-940, p. 5 (La.App. 5 Cir. 3/25/97), 692 So.2d 1255, 1258.

Ultimately, as we earlier emphasized, the arbitrator was contractually authorized to reach an independent conclusion as to whether ExPert's charges to the parties' joint account were permissible. That the arbitrator considered the employment documents in forming his conclusion and rendering his award is undisputed. We have found the arbitrator acted within his authority in all instances challenged by ExPert.

## CONCLUSION

We granted a writ in this matter because of the concern that Louisiana's arbitration laws may have been significantly violated. Having reviewed the record, however, we found the arbitrator acted pursuant to the scope lawfully delineated by the businesses which submitted their dispute to an arbitrator to resolve. When, as here, parties submit their dispute for resolution by arbitration, the role of the courts in reviewing the outcome is limited. As we have previously explained, "[a]rbitration is a substitute for litigation," and "[j]udges are not entitled to substitute their judgment for that of the arbitrators chosen by the parties." **National Tea Co.**, 548 So.2d at 933. Accordingly, the rulings of the lower courts, by which the arbitration award is confirmed, are hereby **AFFIRMED**.