CRAIN, J.
12The plaintiff in this proceeding filed suit against his former employer and other parties seeking recovery based upon the alleged wrongful termination of his employment. After several of the claims were dismissed during the course of the litigation, the remaining defendants filed a motion for summary judgment, which the trial court granted, dismissing with prejudice all remaining claims asserted in the litigation. We affirm.
FACTS.
The plaintiff, Eid Amer, M.D., was hired by Baton Rouge General Medical Center (Hospital) effective July 1, 2011, as a resident in the Hospital’s internal medicine residency training program. The parties executed an employment contract that contained a one-year term, but the agreement could be terminated in accordance with the following provisions:
5T Without Causé: Under no circumstances will either party terminate Agreement without cause in absence of at least thirty (30) prior notice in writing to the other Party.
5.2 For Cause, Agreement shall terminate automatically upon:
• Death of Resident;.
• Resident’s voluntary cessation of performance under Agreement; [or]
• Resident’s ' action/inaction “ that threatens his/her ability to practice medicine or is willful misconduct or dishonesty, fraud, gross negligence [or] malfeasance in performance of duties and responsibilities pursuant to Agreement_
On January 30, 2012, the Hospital provided Dr. Amer with written notice that it was terminating his employment effective March 1, 2012. The notice was delivered to Dr, Amer. at a meeting with Dr. Floyd Roberts, the Hospital’s Chief Medical Officer and Director of the Internal Medicine Residency Program; and Paul Douglas, the Vice-President of Human Resources. A. transcript of the meeting, which was secretly recorded by Dr. Amer, reflects that Dr. Roberts ^explained to Dr. Amer that the residency program emphasized professionalism and a collaborative learning environment, and that Dr. Amer had not met the faculty’s expectations in that regard, Dr. Roberts described the situation as unfortunate but stated, “Delaying this would not be good for you, good for the program, and so the decision of the faculty is final at this point.” Douglas advised Dr. Amer that he would receive thirty days of fully paid administrative leave with benefits, and that he was relieved of his duties effective that day.
Dr. Amer filed suit against the Hospital, Dr. Roberts, and numerous other parties seeking recovery based upon a myriad of claims detailed in one hundred and eighty-six paragraphs of allegations, including breach of contract, negligénce, fraud, defamation, intentional tort, and violation of due process. - The trial court dismissed some of the claims in judgments that are not the subject of the present appeal, and Dr. Amer voluntarily dismissed other claims. Following those dismissals, the remaining defendants were-the Hospital, General Health System, Dr. Roberts, Dr. Venkat Banda, Dr. Robert Kenney, Dr. Robert Chasuk, Dr. Beverly Gladney, Connie Rome, Kendall Johnson, and William R. Holman (collectively, the ' “defendants”).[1]
*127 The defendants filed a motion for summary judgment seeking a dismissal of all remaining claims. When the motion was considered by the trial court, Dr. Amer was still pursuing the following claims against some or all of the defendants; (1) breach of the employment contract, (2) negligently delaying the verification of Dr. Amer’s residency after the termination of the employment (“negligent verification claim”), (3) fraudulently and negligently misrepresenting that the residency program was affiliated with Tulane University School of Medicine 14(“false affiliation claim”), and (4) an alleged violation of the Louisiana Wage Payment Act, Louisiana Revised Statute 23:631, et seq.
The defendants argued that these remaining claims should be dismissed because Dr. Amer failed to exhaust his adr ministrative remedies, citing a provision- in the employment contract providing that “grievances will be considered as outlined in the Medical Education Policy and Procedure Manual.” The defendants introduced an “Internal Medicine Residency Program Policies and Procedural Manual” that sets forth an appeal process available to a resident who “does not agree that due cause exists for probation or dismissal.”
Alternatively, the defendants contended that Dr. Amer could not meet his burden of proving the necessary elements for each of the claims. According to the defendants, Dr. Amer could not prove a breach of the employment contract, because the agreement was properly terminated without cause by giving thirty days written notice. The defendants assert that the negligent verification ' claim cannot be maintained, because a written request and proper authorization had'not been provided for the release of that information, and Dr. Amer presented no proof of damages resulting from the alleged delay in verifying his residency. With regard to the false affiliation claim, the defendants contended that the undisputed evidence established that the residency program was affiliated with Tulane University Medical School (Tulane). Finally, the defendants asserted .that-.the evidence, established without dispute that Dr. Amer was paid all wages owed to him through the effective date, of the termination of his employment; therefore, his claim under the Wage Payment Act should be dismissed.
Dr. Amer argued that the doctrine of exhaustion of administrative remedies generally applies- to disputes involving governmental agencies, and, even in that context, pursuit of the remedy is riot required-if it would be - futile or 'the remedy is | ¿inadequate.- Dr. Amer maintained that the grievance procedure did not provide him with an adequate remedy and that any effort to utilize the procedure would have been futile given that Dr. Roberts advised him that the decision was “final and nonnegotiable.”
In support of his breach of contract claim, Dr. Amer asserted that the “without cause” provision in Subsection 5.1 was null because it conflicted with Section 4.2 of the agreement, which directed that “grievances will be considered as outlined” in the Policy Manual. The grievance procedure set forth in the Policy Manual, according to Dr. Amer, suggested that his employment could only be terminated for cause and only after a due process review. With respect to the negligent verification claim, Dr. Amer attested that an agency assisting him with this request made several telephone calls to the Hospital in March and April of 2012, attempting to obtain the verification to no avail.
Lastly, in support of the false affiliation claim, Dr. Amer relied upon discovery re *128 sponses' from Tulane and an affidavit signed by an associate dean with Tulane, both of which stated that Tulane did not have a written affiliation agreement with the Hospital covering the internal medicine residency program. In a reply memorandum, the defendants pointed out that in a supplemental response to that discovery, Tulane clarified that although there was no written agreement, Tulane and the Hospital have an affiliation relationship that extends to the Hospital’s internal medicine residency program.
The trial court granted the motion for summary judgment, and a judgment was signed on September 9, 2014, dismissing all remaining claims with prejudice. Dr. Amer appeals and assigns multiple assignments of error to the granting of the motion for summary judgment.
JjDISCUSSION
A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. Pro. art. 966 B(2). The party seeking summary judgment has the burden of proving an absence of a genuine issue of material fact. La. Code Civ. Pro. art. 966 C. If the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial. See La.Code Civ. Pro. art. 966 C(2); Suite v. Lafayette City-Parish Consolidated Government, 04-1459 (La.4/12/05), 907 So.2d 37, 56.
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See La.Code Civ. Pro. art. 966 A(2), In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60.
Failure to Exhaust Administrative Remedies: Jurisdiction of the Court
The defendants contend that Dr. Amer failed to exhaust available administrative remedies. Because this defense goes to the jurisdiction of the court, we address this assertion first. See Paulsell v. State, Department of Transportation and Development, 12-0396 (La.App. 1 Cir. 12/28/12), 112 So.3d 856, 860-61, writ denied, 13-0274 (La.3/15/13), 109 So.3d 386; Larrieu v. Wal-Mart Stores, Inc., 03-0600 (La.App. 1 Cir. 2/23/04), 872 So.2d 1157, 1162.
|7GeneraIly, a person aggrieved by an action must exhaust all available administrative remedies or specified procedures before he is entitled to judicial review. Michel v. State, Division of Administrative Law, 13-1419 (La.App. 1 Cir. 11/3/14), 167 So.3d 654, 658, writ denied, 14-2539 (La.2/27/15), 159 So.3d 1069. The failure to exhaust an administrative remedy is usually premised on one of two grounds: (1) that exclusive original jurisdiction over certain subject matter is granted to an administrative agency; or (2) that the legislature, by statutory enactment, has granted primary jurisdiction over certain subject matter to an administrative agency. Paulsell, 112 So.3d at 860. The distinction between primary jurisdiction and exclusive jurisdiction is that primary jurisdiction applies when concurrent jurisdiction exists between the courts and the administrative agency. Daily Advertiser v. Trans-La, a Division of Atmos *129 Energy Coloration, 612 So.2d 7, 27 (La.1993). The exhaustion rule only applies when exclusive jurisdiction exists in the administrative agency, and the courts have only appellate, as opposed to original, jurisdiction to review the agency’s decisions. Daily Advertiser, 612 So.2d at 27; Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc., 01-2524 (La.App. 1 Cir. 12/31/02), 836 So.2d 680, 685, writs denied, 03-0323, 03-0324 (La.4/21/03), 841 So.2d 794, 795.
In the present case, the defendants have not identified any legislative grant of jurisdiction to an administrative agency to adjudicate disputes arising under the employment contract. Rather, the defendants rely upon a grievance procedure incorporated by reference into an agreement between two private parties. In the absence of an available remedy before an administrative agency, such a provision does not invoke the exhaustion rule. See Daily Advertiser, 612 So.2d at 27; Capitol House Preservation Company, 836 So.2d at 685.
|sWe recognize that parties to a contract may agree that alternative dispute resolution measures, such as mediation or arbitration, must be utilized prior to, or in lieu of, filing suit. See La. R.S. 9:4101, et seq. (mediation); La. Civ.Code arts. 3099, et seq.; La. R.S. 9:4201, et seq. (arbitration). In that regard, arbitration provisions in employment contracts, particularly in the context of collective bargaining agreements, may require parties to use a grievance procedure to resolve disputes under the contract. See Bates v. Foremost-McKesson, Inc., 392 So.2d 389, 391 (La.1980). However, not all such provisions are mandatory. See Robinson v. City of Baton Rouge, 566 So.2d 415, 419 (La.App. 1 Cir.1990); Jackson v. Mayo, 42,970 (La.App. 2 Cir. 2/13/08), 975 So.2d 815, 821, writ denied, 08-0553 (La.4/25/08), 978 So.2d 371.
Although the defendants have not specifically asserted that the subject grievance procedure is an arbitration agreement, the jurisdictional nature of the issue, together with the defendants’ extensive reliance on the grievance procedure in support of their motion for summary judgment, require that we address the matter. See Williams v. International Offshore Services, LLC, 11-1240 (La.App. 1 Cir. 12/7/12), 106 So.3d 212, 217, writ denied, 13-0259 (La.3/8/13), 109 So.3d 367 (appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue).
Aside from exceptions not applicable here, arbitration is the result of the choice of two or more parties to have a dispute resolved by person(s) outside the judicial system. See La. Civ.Code art. 3099; Mack Energy Co. v. Expert Oil and Gas, L.L.C., 14-1127 (La.1/28/15), 159 So.3d 437, 441. The ultimate resolution of the dispute is intended to be binding on the parties who have chosen arbitration. Mack Energy Co., 159 So.3d at 441. The party seeking to enforce an arbitration provision has the burden of showing the existence of a valid contract to arbitrate. FIA Card Services, N.A. v. Weaver, 10-1372 (La.3/15/11), 62 So.3d 709, 719; Kosmala v. Paul, 569 So.2d 158, 162 (La.App. 1 Cir.1990), writ denied, 572 So.2d 91 (La.1991). Although arbitration is favored, an arbitration clause must have a “reasonably clear and ascertainable meaning” in order to compel arbitration. See Snyder v. Belmont Homes, Inc., 04-0445 (La.App. 1 Cir. 2/16/05), 899 So.2d 57, 61, writ denied, 05-1075 (La.6/17/05), 904 So.2d 699; Kosmala, 569 So.2d at 162.
In Kosmala, the defendant asserted that a wrongful discharge claim was subject to binding arbitration, citing provisions in the *130 employment contract that established an appeal process to review the non-renewal of the contract for.certain specified reasons. See Kosmala, 569 So.2d at 161-62. However, the particular reason that the defendant did not renew the plaintiffs contract was not among the. specified reasons subject to the review process. Kosmala, 569 So.2d at 162-63. This court concluded that the, alleged arbitration provision was subject to more- than one interpretation and, therefore, did not have a clear and ascertainable meaning, Kosmala, 569 So.2d at 163. As such, the contract did-not require arbitration of the claim. See Kosmala, 569 So.2d at 162.
Dr. Amer relies upon Section 4 of the employment contract, which is captioned “EVALUATION” and provides that'a resident will be evaluated periodically to assist the resident in his personal and professional development. The section further provides that in the event of an adverse decision affecting the resident’s timely completion of his training, the resident “shall be granted the right to present his/' her views and any extenuating circumstances in an appeal process outlined in the Medical Education and Procedure Manual.” Subsection 4.2 similarly provides that the parties “agree that they will provide each other an opportunity to discuss any difference, dissatisfactions, or grievances” and that |1(l“[a]ny grievance will be considered as outlined in the Medical Evaluation Policy and Procedure Manual,”
The ensuing section of the agreement, Section -5, is captioned “TERMINATION,” and Subsection 5.1 authorizes either party to terminate the agreement “without cause” by giving thirty days written notice. That -provision contains no mention or reference to any evaluations, grievances, ■ or appeal process.
The- Policy Manual introduced into evidence contains additional information pertaining to the evaluation process and provides that the Hospital may undertake remedial action and place the resident on probation. According to the Policy. Manual, a resident may be dismissed for failure to meet expected levels of improvement on goals identified during probation, and a resident may also be dismissed for an inability to handle himself in a professional manner. Examples of grounds for “immediate” dismissal from the program include substance abuse, felony conviction, or involvement in unethical or illegal circumstances. ■
The Policy Manual further provides that a resident has the right to use an appeal process if he “does not agree that due cause exists for probation or dismissal.” That procedure, which is not • expressly identified as an arbitration proceeding, calls for two levels of review, first by the program faculty, and second by a subcommittee that makes a recommendation to the Hospital’s board of directors. The decision by the board of directors is “final and will determine the resident’s participation in the academic program [and] will exhaust the appeal mechanism for the resident.”
We pretermit consideration of whether these provisions constitute a binding arbitration agreement,- because we find the grievance procedure does not apply to the facts of this case. The Hospital’s right under Subsection 5.1 to, terminate Dr. Amer’s employment agreement. without cause is qualified only by the requirement Inof providing written notice thirty days in advance of the termination. The- language of Subsection 5.1 does not condition that right on an evaluation, grievance, or completion of an appeal process.
As- specified in the Policy Manual, the grievance procedure is available at the re *131 quest of a resident to determine whether “due cause exists for probation or dismissal.” (Emphasis added.) Thus, if the Hospital had undertaken some action against Dr. Amer, such as probation or immediate dismissal, for a cause specified in the contract or Policy Manual, , the grievance pro: cedure would have been available to determine. whether due cause existed for the adverse action. However, the Hospital did not attempt to immediately terminate the agreement in reliance on some specified cause. Instead, the Hospital terminated Dr. Amer’s employment 'without cause by providing the necessary thirty-day notice pursuant to Subsection 5:1 of the contract. When a party exercises its right to terminate the agreement without cause, no purpose would be served by pursuing a grievance ■ procedure designed - to determine whether "due cause" existed for the termination. Therefore, we find the grievance procedure is not applicable to the termination of Dr. Amer’s employment contract.
For these reasons, Dr. Amer did not fail to exhaust available administrative -remedies; and to the extent the grievance procedure could be characterized as an | ^arbitration agreement, the procedure is not applicable to the claim before the court.[2]
Breach of Contract Claim
Dr. Amer alleges 'that 'the Hospital breached the employment agreement’ When it terminated his., employment without cause, arguing that the “without cause” provision conflicts with other provisions of the contract and Policy Manual and, therefore, is null,
The resolution of this argument involves an interpretation of the contract, which has the effect of law between the parties. See La. Civ.Code art. 1983; Baldwin v. Board of Supervisors for University of Louisiana System, 14-0827 (La.10/15/14), 156 So.3d 33, 37. The responsibility of the judiciary in interpreting contracts is to determine the common intent of the parties. See La. Civ.Code art. 2045. Courts begin their analysis of the parties’ common intent by examining the words of the contract itself. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may ,be made in search of the parties’ intent. La. Civ.Code art. 2046. Furthermore, - a contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. See La. .Civ.Code art. 2050. One provision of the | ^contract should not be construed separately at the expense of disregarding other provisions. Baldwin, 156 So.3d at 38.
The employer-employee relationship is a contractual relationship, and *132 thus an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. Read v. Willwoods Community, 14-1475 (La. 3/17/15), 165 So.3d 883, 886-87. Louisiana law provides that employment contracts are either limited term or terminable at will. See La. Civ.Code arts. 2746, 2747. Under a limited term contract the parties agree to be bound for a certain period, during which the employee is not free to depart without assigning cause, nor is the employer at liberty to dismiss the employee without cause. Read, 165 So.3d at 887. When a contract does not provide for a limited term, an employer can dismiss the employee at any timé and for any reason without incurring liability. See La. Civ.Code art. 2749; Read, 165 So.3d at 887. For a mandatory term employment contract to exist, the parties must have clearly agreed to be bound for a certain period of time during which the employee is not free to depart without assigning cause and the employer is not free to depart without giving a reason. Read, 165 So.3d at 889.
The subject employment contract was for a fixed term of one year; however, as previously recognized, Subsection 5.1 of the contract authorized either party to terminate the agreement by providing thirty days prior written notice. This provision qualified the term of employment. See Shepard v. Phycor of Ruston, Inc., 29,181 (La.App. 2 Cir. 5/7/97), 711 So.2d 288, 292. Section 5.1 essentially reduced the term of the employment contract from one year to thirty days, as either party could terminate the agreement without cause by providing the required notice.
|14No reason is necessary for an employer to terminate an employee “without cause,” and such provisions in employment agreements do not violate the public policy of Louisiana or federal law. Jackson v. Housing Authority for Parish of St. James, 05-665 (La.App. 5 Cir. 3/14/06), 926 So.2d 606, 610; see also Borne v. Magnolia School, 277 So.2d 642, 645 (La.1978) (employment contract gave either party the right to terminate the employment for any reason by providing two weeks prior notice); Kalshoven v. Loyola University, 229 La. 69, 75, 85 So.2d 34, 36 (1956) (employment contract with four year term could be terminated by the plaintiff at will, or by the defendant for circumstances that it deemed to be grave, by providing the other party with six months’ notice).
Dr. Amer nevertheless asserts that the “without cause” provision in Subsection 5.1 of his contract is null because it allegedly conflicts with Section 4 of the agreement and certain language in the Policy Manual. Section 4 addresses the evaluation and grievance process and incorporates the previously discussed appeal procedure contained in the Policy Manual. Dr. Amer seizes on the contract’s reference to the grievance procedure to avail himself of another provision in the Policy Manual that suggests, according to Dr. Amer, that a resident’s employment can only be terminated for cause. That provision states that a resident’s failure to fulfill his obligations and responsibilities, or his failure to observe rules and regulations, “may result in placing the resident on probationary status, other disciplinary action, or for cause, repeated violations or failure to satisfactorily progress with remedial plans, cancellation of the contract of the applicable resident.” (Emphasis added.)
The provision relied upon by Dr. Amer does not purport to be the exclusive means of terminating a resident’s contract, nor does it expressly limit either party’s right to terminate the contract without cause by giving the necessary thirty day 1 ^notice. However, more importantly, the employment contract does not refer to or *133 otherwise incorporate this language from the Policy Manual as a qualification of the parties’ mutual right to terminate the agreement without cause. The contract, as opposed to the Policy Manual, is the law between the parties. See La. Civ.Code art. 1983; Baldwin, 156 So.3d at 37. Employee manuals, polices, or grievance procedures do not confer any contractual rights upon the employee, unless the parties have so agreed. See Keller v. Sisters of Charity of Incarnate Word, 597 So.2d 1113, 1116 (La.App. 2 Cir.1992); Leger v. Tyson Foods, Inc., 95-1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397, 402, writ denied, 96-0545 (La.4/19/96), 671 So.2d 920; Mix v. University of New Orleans, 609 So.2d 958, 964 (La.App. 4 Cir.1992), writ denied, 612 So.2d 83 (La.1993).
An acknowledgment signed by Dr. Amer indicates that he received the Policy Manual over two months after he signed his employment contract. That acknowledgement provides that the contents of the Policy Manual are “subject to change at [the] discretion of Program Leadership.” While the employment contract renders some provisions in the Policy Manual binding by incorporating them into the agreement, the contract does not incorporate any language from the Policy Manual that i-estricts the right of either party to terminate the agreement without cause by giving the necessary notice.
In the event of any conflict between the employment contract and the Policy Manual, the employment contract is the law between the parties and determines their respective rights and obligations. See La. Civ.Code art. 1983; Baldwin, 156 So.3d at 37; see also Mix, 609 So.2d at 963-64. Therefore, we find no merit to Dr. Amer’s contention that Subsection 5.1 should be declared null because it purportedly conflicts with Section 4 of the contract or with provisions in the Policy Manual that are not a part of the agreement.
luiln related assignments of error, Dr. Amer asserts that the trial court erred in (1) upholding the Hospital’s reason for terminating the agreement,-(2) ruling that Dr. Amer was entitled to only a one month notice ' of termination instead of four months, and (3) ruling that the Hospital was justified in terminating the contract without taking prior remedial action or placing Dr. Amer on probation.
As previously recognized, no reason is necessary for an employer to terminate an employee without cause. Jackson, 926 So.2d at 610. While this right is tempered by federal and state laws that prohibit certain reasons for dismissal of an employee, such as race, sex, or religious beliefs, Dr. Amer does not assert any prohibited basis for the termination of his employment. See Burnett v. East Baton Rouge Parish School Board, 11-1851 (La.App. 1 Cir. 5/3/12), 99 So.3d 54, 59, writ denied, 12-1217 (La.9/21/12), 98 So.3d 342. Instead, he asserts that the reason provided by the Hospital, a purported lack of ¡professionalism by Dr. Amer, is contrary to the evidence and, therefore, presents a material issue of fact precluding summary judgment dismissing his claim.
The Hospital exercised its right under Subsection 5.1 of-the agreement to terminate Dr. Amer’s employment without cause by giving him thirty days written notice. In the absence of conduct prohibited by law, the Hospital’s stated reason for exercising that right is inconsequential. See Jackson, 926 So.2d at 610. Any issue of fact, concerning that reason, therefore, is not material and does not preclude summary judgment. See Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765 (a fact is- material if it potentially -insures or precludes recovery, affects a litigant’s ulti *134 mate success, or determines the outcome of the legal dispute).
Dr. Amer also relies on language in the Policy Manual to argue that he was entitled to four months’ notice and a probationary .period prior to the termination of his employment These provisions do not form a part of the employment contract, 1 17nor do they apply to a termination of the agreement .without cause under Subsection 5.1. These assignments of error are also without merit.
Based upon our de novo review of the record, the trial court did not err in granting summary judgment dismissing the breach of contract claims asserted by Dr, Amer.
Negligent Verification Claim
Dr. Amer asserts that, after the termination of his employment, the Hospital failed to timely verify his participation in the residency program. In his affidavit, Dr. Amer attested that an agency assisting him with this request made several telephone calls to the Hospital in March and April of 2012, in an attempt to obtain the verification documents.
The defendants submitted the affidavit of Dr, Roberts, who stated that the Hospital requires two things before responding to any request for verification of residency: (1) a written request, and (2) written authorization from the resident to release the information. Dr. Roberts- further attested that-neither Dr. Amer nor anyone on his behalf provided a written request and proper authorization. Dr. Amer states in his affidavit that he was not aware of any requirement that the request for verification had to be in writing or that it required written authorization from him. He also argues that the Hospital has not cited any written rule to that effect and,' instead, relies on the affidavit of Dr. Roberts to establish that policy.
The only written request introduced into evidence was an email from Dr. Amer to Dr. Roberts dated April 18, 2012. Dr. Roberts responded the next day and advised that the Hospital wanted “to help you find another opportunity” and instructed him to direct-the inquiry to an identified individual who would coordinate a response. According to the affidavit of Dr. Roberts, the residency | ^verification documents were provided directly to Dr. Amer on May 4, 2012, about two weeks after the email request.
As to the effect of the delay, Dr. Amer attested that he had an interview on March 30, 2012 for a fellowship, and the program manager informed him that they would “be in touch with me in the middle of the following week (after getting my residency education verified).” According to Dr. Amer, he did not hear back from anyone regarding the fellowship, and he has “since become aware of Dr. Roberts’ deliberate failure to provide them the required verification of my residency education.” No further information was provided concerning the assertion that Dr. Roberts deliberately failed to provide the documentation.
The record reflects that the Hospital sent Dr. Amer a copy of his resident file on February 9, 2012, shortly after the termination of his employment. Although the record reflects that a third-party made several telephone calls to the Hospital in an apparent effort to obtain verification of Dr. Amer’s residency, the undisputed evidence also establishes that the Hospital requires certain documentation-before releasing that information, specifically a written request and written authorization from the former employee. That information was not provided by the third-party requesting verification of Dr. Amer’s residency, so the Hospital provided verification letters -directly to Dr. Amer. That *135 documentation was provided to him within approximately two weeks of his request. The record contains no evidence from a prospective employer indicating any difficulty in obtaining timely verification of Dr. Amer’s residency or, moreover, that any such failure was a factor in any decision hot to hire Dr. Amer.
Based upon our de novo review of the record, the trial court did not err in granting summary judgment dismissing the claim by Dr. Amer that the defendants negligently failed to timely verify his residency.
L19FaIse Affiliation Claim
Dr. Amer alleges that the Hospital falsely represented that its internal medicine residency program was affiliated with Tulane. In his opposition to the motion for summary judgment, Dr. Amer relied upon discovery responses from Tulane and an affidavit signed by an associate dean with Tulane, both of which stated that Tulane did not have a written affiliation agreement with BRMC covering the hospital’s internal medicine residency program. "
However, as emphasized by the defendants, Tulane supplemented this discovery response and clarified that although there was no written agreement, Tulane and the Hospital “have an affiliation relationship and that relationship extends to the [Hospital’s] Internal Medicine Residency Program.” The supplemental response continues, “As referenced by numerous communications by [the Hospital] and Tulane representatives, [the Hospital] and Tulane agreed that the Internal [Medicine] Residency Program would have an affiliation that entailed the sharing of educational resources and assistance.... ” Dr. Roberts also attested that the residency program is affiliated with Tulane.
We also note that Dr. Amer produced no evidence that the residency program’s affiliation with Tulane was a material fact in his decision to enter the employment contract, or, if the affiliation representation was false, that the lack of an affiliation with Tulane caused or contributed to any damages allegedly sustained by him. ‘ Dr. Amer’s twelve-page affidavit does not once mention the residency program’s affiliation with- Tulane or how the representation of that affiliation impacted his employment decision... ;
The' trial court did not err in granting summary judgment dismissing the claim alleging that the Hospital misrepresented that its internal medicine residency program was affiliated with Tulane. ■'
|2qWage Payment Act Claim
In his final claim,. Dr. Amer contends that the defendants violated the Wage Payment Act by failing to pay his salary for the balance , of the employment contract.
The Wage Payment Act is designed to compel prompt payment of earned wages upbh the discharge or resignation of an employee. See La. R.S. 23:631 A; Davis v. St. Francisville Country Manor, L.L.C., 13-0190 (La.App. 1 Cir. 11/1/13), 136 So.3d 20, 22. Specifically, Subsection 23:631 A(1)(a) provides that upon the discharge of an employee, the employer shall pay the employee “the amount then due under the terms of employment” on or before the earlier of the next regular pay day or fifteen days following the discharge of the employee. For purposes of Subsection 23:631(A), wages are equivalent to the “amount then due under the terms of employment,” i.e., wages, or compensation, earned during a pay period. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, 622; Davis, 136 So.3d at 22.
The record establishes that Dr. Amer was paid all compensation due to him *136 through the conclusion of the thirty-day notice period ending on March 1, 2012. Dr. Amer does not claim that accrued compensation or benefits were not timely paid to him after the termination of his employment. Rather, he seeks to characterize his alleged damages for breach of contract, which consists of future compensation for the balance of the agreement, as unpaid “wages.”
We have previously held herein that Dr, Amer’s claim for breach of contract was properly dismissed. Furthermore, when additional compensation is due under an employment agreement upon the resignation or termination of an employee, such additional compensation does not constitute “wages” for purposes of Section |2123:631. See Boudreaux, 644 So.2d at 622. The trial court did not err in summarily dismissing Dr. Amer’s claim under the Louisiana Wage Payment Act.
CONCLUSION
The summary judgment signed by the trial court on September 9, 2014, is affirmed. All costs of this appeal are assessed to Eid Amer, M.D.
AFFIRMED.

. The trial court previously dismissed all claims against two other defendants, the Ad *127 ministrators of the Tulane Educational Fund and Benjamin Sachs.

. We note-that outside the scope of collective bargaining agreements, the validity of binding arbitration provisions in employment com tracts is not well settled in this state. See La. R.S. 9:4216 (providing that the Louisiana Arbitration-Act does not apply to contracts;of employment of labor); but see Wright v. Round the Corner Restaurants of La., Inc., 252 So.2d 341, 344-45 (La.App. 4 Cir.1971) (exclusion in Section 9:4216 does not apply to employment requiring managerial skill, discretion, and judgment); see also Stadtlander v. Ryan's Family Steakhouses, Inc., 34,384 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, 888-89, writ denied, 01-1327 (La.6/22/01), 794 So.2d 790 (dispute was subject to arbitration where employment agreement specifically adopted the Federal Arbitration Act, 9 U.S.C. § 1, et seq.); Wied v. TRCM, LLC, 30,106 (La.App. 2 Cir. 7/24/97), 698 So.2d 685 (dispute was subject to binding arbitration under arbitration clause of employment agreement). With respect to grievance procedures set forth in collective bargaining agreements, see 29 U.S.C.A. § 173(d); Bates, 392 So.2d at 391-92. Because we find the subject grievance procedure inapplicable to the present dispute, we pretermit any Consideration of the validity of an arbitration’ provision in an employment contract.