STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0127

JAMES CREGG

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE

Judgment Rendered: __MAR 0 1 2024__

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 710803

The Honorable Wilson E. Fields, Judge Presiding

| | |
|---|---|
| Christopher L. Whittington<br>Robert L. Campbell<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee,<br>James Cregg |
| Leo C. Hamilton<br>Carroll Devillier<br>Alexandra C. Hains<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant,<br>Board of Supervisors of Louisiana<br>State University and Agricultural<br>and Mechanical College |
| Jeff Landry<br>Attorney General<br>Christine S. Keenan<br>Elizabeth Bailly Bloch<br>Special Assistant Attorneys General<br>Baton Rouge, Louisiana | |

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

Hester, J. concurs

**MILLER, J.**

This matter is before us on appeal by defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, from a judgment of the trial court in favor of plaintiff, James Cregg. For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

In 2018, James Cregg began his employment with Louisiana State University ("LSU") as the offensive line coach for the football team. Following LSU's successful 2019 football season, Mr. Cregg's employment contract was renegotiated and extended from April 1, 2020, to March 31, 2022.

In 2019, Mr. Cregg met a prospective student athlete attending a football camp at LSU and began recruiting him for LSU's offensive line. In 2020, during the covid dead period,[1] the student and his mother attended Tiger Turnout, an event coordinated by the prospective recruits and their parents on LSU's campus, for prospects and their parents over the course of Labor Day weekend. At the end of the weekend, the prospective student athlete's mother contacted Mr. Cregg and inquired about his neighborhood because she intended on relocating to where her son attended college. Mr. Cregg provided his address and told them that they could "stop by" his neighborhood. They subsequently drove to Mr. Cregg's neighborhood where he greeted them while on a golf cart and gave the student recruit a bag of LSU gear. The recruit's mother later contacted Mr. Cregg and advised that they were returning to Baton Rouge the following weekend. She asked Mr. Cregg if they could "swing by" his house and "say hello." Mr. Cregg gave them permission to do so and spoke to them outside, in front of his home.

---

[1] During a "dead period," the coaching staff is prohibited by NCAA rules from having in-person contact with prospective recruits on campus or off campus. However, staff members are allowed to have contact with recruits via zoom, face time, and telephone. In 2020, the dead period was extended due to the Covid-19 virus. This extended period is referred to as the "covid dead period."

The NCAA subsequently conducted an investigation of rule violations stemming from Mr. Cregg's in-person contact with the prospective student athlete and gifting of LSU gear to the student. NCAA investigators requested an interview with Mr. Cregg, which was conducted on May 14, 2021. In the interview, Mr. Cregg denied having contact with the student. Shortly after the interview, Mr. Cregg requested a second interview with NCAA investigators, which was conducted one week later on May 21, 2021. In his second interview, Mr. Cregg confessed that he was untruthful in the first interview and admitted to having contact with the prospective student and his mother and giving the student gear, in violation of NCAA rules.

By letter dated June 2, 2021, LSU's Head Football Coach Ed Orgeron informed Mr. Cregg of LSU's intent to terminate his employment agreement for cause for the following reason:

> On May 21, 2021, in an interview with Libby Harmon, NCAA Associate Director of Enforcement, you admitted to visiting with and providing gear to a team prospect during the COVID recruiting dead period. You also admitted to knowing such contact was impermissible when you engaged in the conduct. This knowing violation of NCAA rules constitutes "cause" under Section 11(A)(1)(a) of the Employment Agreement.

Pursuant to Section 11(A)(3) of the employment agreement, Mr. Cregg was given five days to provide a written response to the notice, which he submitted on June 7, 2021.

By letter dated June 17, 2021, Director of Athletics Scott Woodward notified Mr. Cregg that after reviewing and considering the notice of intent to terminate his employment issued by Coach Orgeron on June 2, 2021, as well as Mr. Cregg's response, his employment was terminated for cause, effective June 17, 2021, pursuant to Section 11(A)(3) of his employment agreement. Mr. Woodward set forth the following as the basis for Mr. Cregg's termination:

During the interviews with NCAA enforcement staff, you admitted to multiple violations of NCAA rules related to the recruiting dead period. In the initial interview, you denied in-person contact with a prospect and denied providing the same prospect gear but acknowledged that such conduct would be a violation of the rules. In the second interview, you admitted to the conduct and again acknowledged that such conduct was a violation of the rules. Your knowing violation of NCAA rules, and lack of honesty in the initial interview, is sufficient basis for termination for cause pursuant to Section 11(A)(1) of the Employment Agreement, particularly Sections 11(A)(1)(a), 11(A)(1)(i) and 11(A)(1)(q).

On June 22, 2021, Mr. Cregg requested an appeal to the University President pursuant to Section 11(A)(3) of the employment agreement. The matter was heard on March 9, 2022 before the President's designee. Thereafter, the President's designee issued a decision on March 14, 2022,[2] finding that Mr. Woodward's June 17, 2021 decision to terminate Mr. Cregg for cause "[was] supported by sufficient evidence of 'cause' under the employment agreement" and recommending that it be affirmed. The recommendation was accepted by LSU President, William F. Tate IV. The reasons for the President's decision are as follows:

> The NCAA enforcement staff alleged that you violated NCAA rules by engaging in two separate in-person interactions with a prospective student-athlete and the student-athlete's family during two separate weekends in September 2020 during the NCAA-imposed COVID dead period.
>
> You were interviewed twice, first on May 14, 2021 and then, at your own request, again on May 21, 2021. The timing of the interview was entirely within the domain of the NCAA enforcement staff.
>
> The differences between the May 14, 2021 and May 21, 2021 interviews are remarkable. During the May 14, 2021 interview by NCAA enforcement staff, you repeatedly denied any in-person contact with a prospective student-athlete and denied providing the prospective student-athlete with any LSU gear. You did acknowledge, however, that any such conduct would be a violation of NCAA rules.
>
> In the May 21, 2021 interview by NCAA enforcement staff, one week later, the story was completely different. You admitted to finding out where (sic) the prospective student-athlete and his family would be in [your] neighborhood, giving directions, grabbing some old gear and putting it in a duffle bag, and riding [in your] golf cart to go see them in person. You admitted to having the in-person interaction, giving the prospective student-athlete LSU gear and

---

[2] The letter is incorrectly dated March 14, 2021.

4

knowing that both were impermissible. You also admitted to the impermissible in-person contact with the student-athlete and [his] family the following weekend.

LSU concluded that your conduct in September 2020 constituted either a Level I or II violation under NCAA bylaws, or material and substantial violations or repeated Level III and/or IV violations under NCAA bylaws. By your own admission, the violations were not inadvertent. Moreover, as you conceded in the May 21, 2021 interview, you were untruthful in your initial interview with NCAA enforcement staff. Therefore, the evidence supports multiple NCAA rule violations.

Although you complain of the timing of Brad Davis' hire, such is irrelevant to your misconduct in September 2020 and your failure to truthfully respond during the NCAA interview in May 2021.

(Citations omitted.)

In the meantime, while his appeal to the University President was pending, Mr. Cregg filed a suit for damages on August 18, 2021, against the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (also referred to herein as "LSU") alleging it intentionally breached its contract or employment agreement with Mr. Cregg. Mr. Cregg contended therein that Section 11(A)(1)(a) of the employment agreement provides that "cause" for termination is defined as the commission of a Level I or Level II violation of NCAA bylaws, or repeated Level III and/or Level IV violations of NCAA bylaws, and that the NCAA had not issued a ruling that Mr. Cregg committed such violations, thus rendering that provision inapplicable; that LSU acted in bad faith in hiring Brad Davis as the new offensive line coach to replace him on June 10, 2021, before he had been terminated; and that Mr. Woodward cited two additional grounds for termination in his June 17, 2021 letter that he had not been provided notice of, namely Sections 11(A)(1)(i) and 11(A)(1)(q), which constituted a clear violation of his procedural due process rights. Mr. Cregg thus sought an award of liquidated damages as provided for in the employment agreement, lost past and future earnings, lost future earning capacity, humiliation, and severe emotional anguish and pain and suffering.

The civil suit was set for trial on July 14, 2022. At the conclusion of trial, the court deferred ruling pending the submission of post-trial briefs.[3] On August 25, 2022, the trial court issued oral reasons finding that:

(1) Mr. Cregg was not provided notice of the two additional grounds for termination asserted in Mr. Woodward's June 17, 2021 letter, and thus, that "LSU did not give [Mr. Cregg] proper notice of exactly what they were terminating him for";

(2) because the employment agreement was silent as to the consequences for failure to provide notice, the agreement was terminated without cause pursuant to Section 11(B)(1), which provides that in the event that LSU terminates the agreement without cause, LSU will pay the employee liquidated damages; and

(3) the agreement was terminated without cause because LSU did not allow the appeal process provided in the employment agreement "to run its course" before hiring a new offensive line coach on June 11, 2018, to replace Mr. Cregg "prior to [Mr.] Cregg finishing his appeal process."

The trial court thus awarded Mr. Cregg liquidated damages in the amount of $492,945.20, plus interest and costs.[4] The trial court signed a judgment in conformity with its reasons on September 8, 2022.

Following the denial of its motion for new trial, LSU filed the instant suspensive appeal, contending that the trial court:

(1) erred in rendering judgment in favor of Mr. Cregg where the judgment is premised on LSU's failure to provide Mr. Cregg with proper procedural notice regarding his termination since Mr. Cregg abandoned his claim that LSU violated his procedural due process rights at trial;

---

[3]The trial court also indicated that it was going to review the deposition of Coach Orgeron before issuing its oral reasons. However, we are unable to locate any such deposition in the record before us on appeal.

[4]In awarding damages, the trial court found that, pursuant to the employment agreement, the parties agreed to only liquidated damages and that consequential damages were prohibited.

6

(2) erred in finding that the June 17, 2021 termination letter violated Section 11(A)(3) of the 2020 employment agreement and Mr. Cregg did not assert this claim until the eve of trial;

(3) erred in finding that LSU breached Section 11(A)(3) of the employment agreement by not allowing the appeal process to run its course before hiring a replacement coach;

(4) erred in finding that LSU breached Section 11(A)(1)(a) of the employment agreement;

(5) abused its discretion by denying LSU's motion for new trial because the law and evidence do not support a finding that LSU breached Section 11(A)(3) of the employment agreement;

(6) abused its discretion in denying LSU's motion for new trial because the law and evidence do not support a finding that LSU breached Section 11(A)(1)(a) of the employment agreement;

(7) abused its discretion in denying LSU's motion for new trial because previously unavailable evidence acquired after the conclusion of trial proved that LSU had proper cause to terminate Mr. Cregg's employment and that proper notice was given; and

(8) erred in preventing LSU from admitting transcripts of Mr. Cregg's two interviews with the NCAA and the NCAA's Notice of Allegations into the record.

**Motion to Dismiss/Answer to Appeal**

At the outset, we note that Mr. Cregg filed a motion to dismiss this appeal contending that, in its motion for suspensive appeal, although LSU references the September 8, 2022 judgment on the merits and the November 15, 2022 judgment denying LSU's motion for new trial, LSU only stated its intention to appeal the November 15, 2022 judgment. Mr. Cregg contends that an interlocutory judgment

7

denying a motion for new trial is not appealable, and that the instant appeal should be dismissed.

We disagree. The assignments of error set forth in LSU's appellate brief clearly challenge the judgment on the merits, as well as the judgment denying its motion for new trial. Generally, where it is clear from the appellant's brief that the appellant intended to appeal a judgment on the merits, along with a judgment denying a motion for new trial, an appellate court will consider the appeal to be an appeal of the judgment on the merits even though the notice of appeal only refers to the judgment denying the motion for new trial. Reed v. Louisiana Horticulture Commission, 2021-0657 (La. App. 1st Cir. 12/22/21), 341 So. 3d 66, 68 n.2. Accordingly, we will consider this matter as an appeal from both the judgment denying the motion for new trial as well as the judgment in favor of Mr. Cregg on the merits. See In re Interdiction of Cockerton, 2021-1316 (La. App. 1st Cir. 4/8/22), 341 So. 3d 834, 836, n.1.

In the alternative, Mr. Cregg filed an answer to this appeal contending that the district court erred in: (1) failing to admit and consider certain pieces of evidence proffered by Mr. Cregg; (2) failing to award proven consequential damages; (3) improperly granting leave of court allowing LSU to file untimely affidavits in support of its motion for new trial; and (4) improperly considering evidence in support of LSU's motion for new trial that was not offered, filed, or introduced into evidence.

## DISCUSSION

### Admission of NCAA Interview Transcripts
### Assignment of Error Number Eight

LSU contends that the trial court erred in preventing it from admitting transcripts of Mr. Cregg's two interviews conducted by the NCAA as well as the NCAA's Notice of Allegations at trial.

If a trial court commits an evidentiary error that interdicts its factfinding process, this court must conduct a *de novo* review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Penton v. City of Hammond Police Department, 2007-2352 (La. App. 1st Cir. 5/2/08), 991 So. 2d 91, 95. Accordingly, we first address LSU's evidentiary challenges. See Spann v. Gerry Lane Enterprises, Inc., 2016-0793 (La. App. 1st Cir. 8/24/10), 256 So. 3d 1016, 1022, writ denied, 2018-1584 (La. 12/3/18), 257 So. 3d 194, and writ denied, 2018-1649 (La. 12/17/18), 258 So. 3d 599.

During LSU's cross-examination of Mr. Cregg, counsel for Mr. Cregg objected to LSU's attempt to introduce transcripts from Mr. Cregg's NCAA interviews on the basis that the investigation was ongoing, the interviews were confidential, and Mr. Cregg has not waived the confidentiality of those proceedings.[5] He further noted that the transcripts were not certified or authenticated. The trial court sustained the objection, but allowed LSU to question Mr. Cregg about whether the information he provided in the first NCAA interview was accurate. LSU proffered the transcripts from Mr. Cregg's first and second interviews. During counsel for LSU's examination of Matt Jakoubek, LSU's Associate Athletics Director for Compliance, he attempted to question Mr. Jakoubek about the Notice of Allegations issued by the NCAA against Mr. Cregg. Counsel for Mr. Cregg objected arguing that President Tate, the party the Notice of Allegations was directed to, not Mr. Jakoubek, was the proper party to authenticate this document. The trial court agreed and sustained Mr. Cregg's objection, but allowed counsel for LSU to proffer the Notice of Allegations.

---

[5]NCAA Bylaw Article 19 sets forth the provisions governing the Infractions Program. Section 19.5.8 requires individuals and institutional representatives to sign a statement of confidentiality agreeing not to release recordings or interview transcripts to a third party. Section 19.01.3 further provides that an individual or institution shall not make public disclosures about the case until a final decision has been announced in accordance with prescribed procedures.

9

The trial court is granted broad discretion in making evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. Landry v. City of Mandeville, 2021-1362 (La. App. 1st Cir. 4/27/22), 342 So. 3d 337, 346, writ denied, 2022-00828 (La. 9/27/22), 347 So. 3d 155. An abuse of discretion generally results from a conclusion reached capriciously or in an arbitrary manner, which means the absence of a rational basis for the action taken. Thus, a trial court's discretionary action will not be disturbed on review if reasonable people could differ as to the propriety of the trial court's action. Boone Services, LLC v. Clark Homes, Inc., 2023-0299 (La. App. 1st Cir. 10/18/23), __ So. 3d __, __, 2023 WL 6886072, *2, citing Landry, 342 So. 3d at 346.

The trial court allowed LSU to question Mr. Cregg about the accuracy of his statements in the NCAA interview. Moreover, testimony about the interviews was elicited through other witnesses, including Bo Bahnsen, Senior Associate Athletic Director and Head of Compliance for LSU, who was present as the institution representative during both interviews. With reference to the Notice of Allegations issued by the NCAA, LSU failed to call an appropriate witness to authenticate the notice and question about same. Considering that a rational basis exists for the rulings of the trial court, see Landry, 342 So. 3d at 348, on review, we find no abuse of the trial court's vast discretion in precluding introduction of the NCAA interview transcripts and Notice of Allegations against Mr. Cregg. Also, we cannot say that LSU established that any of the alleged errors were prejudicial or otherwise had a substantial effect on the trial court's judgment such as to interdict the fact-finding process or warrant *de novo* review.

As such, we find no merit to this assignment of error.

**Breach of Employment Agreement**
**Standard of Review and Legal Precepts**

10

Interpretation of a contract is a question of law. Thus, an appellate court applies the *de novo* standard of review to statutory and contract interpretation. See Lonesome Development, LLC v. Town of Abita Springs, 2021-1463 (La. App. 1st Cir. 6/29/22), 343 So. 3d 831, 839, writ denied, 2022-01158 (La. 11/1/22), 349 So. 3d 3. However, where no contract provision applies or where factual findings are pertinent to the interpretation of the contract, we apply the manifest error standard of review. Boone Services, LLC, __ So. 3d at __, 2023 WL 6886072 at *2.

Resolution of assignments of error three and four involve an interpretation of the contract, which has the effect of law between the parties. See La. C.C. art. 1983; Baldwin v. Board of Supervisors for University of Louisiana System, 2014-0827 (La. 10/15/14), 156 So. 3d 33, 37. The responsibility of the judiciary in interpreting contracts is to determine the common intent of the parties. See La. C.C. art. 2045. Courts begin their analysis of the parties' common intent by examining the words of the contract itself. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Most importantly, a contract must be interpreted in a common-sense fashion, affording the words of the contract their common and usual significance. Prejean v. Guillory, 2010-0740 (La. 7/2/10), 38 So. 3d 274, 279. A contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC, 2012-2055 (La. 3/19/13), 112 So. 3d 187, 192. A contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. See La. C.C. art. 2050. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Amer v. Roberts, 2015-0599 (La. App. 1st Cir. 11/9/15), 184 So. 3d 123, 131.

**Assignment of Error Number Three**

11

In its third assignment of error, LSU contends that the trial court erred in finding that LSU breached Section 11(A)(3) of the employment agreement by not allowing the appeal process to run its course before hiring a replacement coach.

Section 11(A)(3) of the employment agreement explains the process by which LSU determines whether criteria supporting a termination for "cause" are met and provides for notice and review of any contemplated termination for cause, as follows:

> Any judgment as to whether the criteria contained in this Section have been met shall not be made arbitrarily or capriciously by LSU. Prior to termination for cause, EMPLOYEE shall be provided with written notice of contemplated termination and a statement of the grounds and facts in support thereof and shall have five calendar days from receipt of such notice to respond in writing and/or present documents or other written evidence to the Athletic Director.
> After review [of] any such response[,] the Athletic Director or the Athletic Director's designee will provide EMPLOYEE written notice of a decision. Within five calendar days of receipt of the decision, EMPLOYEE may make a written request for a hearing to the President. If no such request is made, the decision of the Athletic Director is final. If a request for hearing is made, the President or the President's designee(s) will conduct the hearing. The hearing and related proceedings will not be open to the public. EMPLOYEE has the right to an advisor, including legal counsel, at the hearing but the advisor or counsel may not participate in the hearing, question witnesses or address the President or President's designee(s).

Without pointing to any specific provision or language, the trial court determined that the employment agreement was terminated *without* cause because LSU did not allow Mr. Cregg's appeal process "to run its course" before hiring a new offensive line coach. After thoroughly reviewing the employment agreement herein, however, we can find no language, nor does Mr. Cregg identify any language, prohibiting or restricting LSU from hiring a replacement coach during the pendency of an appeal of the agreement's termination or otherwise requiring that his position remain vacant during the pendency of an appeal.

The words of the contract herein are clear and explicit and lead to no absurd consequences. See La. C.C. art. 2046. As set forth above, Section 11(A)(3) of the

12

employment agreement provides that "Any judgment as to whether the criteria contained in this Section [which defines cause for termination] have been met shall not be made arbitrarily or capriciously by LSU." Simply put, the employment agreement precludes LSU from making an arbitrarily or capricious determination that cause for termination exists.

Here, the hiring of a new offensive line coach does not interdict the process of identifying and establishing cause for termination. Moreover, LSU's decision to hire a new offensive line coach is not subject to an arbitrary or capricious finding in the context of this process. Mr. Cregg was given a notice of LSU's intent to terminate his employment on June 2, 2021. The judgment of the trial court, which determined Mr. Cregg was terminated without cause, was not signed until September 8, 2022. The question to be resolved is not whether LSU had the right to terminate Mr. Cregg's employment agreement, but whether LSU terminated Mr. Cregg without cause, and consequently owed Mr. Cregg liquidated damages associated with a termination without cause. Either way, in the interim, LSU was without an offensive line coach. Hiring a coach to fill the vacancy in this coaching staff position prior to its 2021 football season only seems prudent. Where the employment agreement contained no prohibition on staffing the position before the appeal process was complete, we find the trial court erred in determining that LSU breached the employment agreement, and by implication, that LSU acted arbitrarily and capriciously by filling the vacancy while in the process of determining whether cause for termination existed.

### Assignment of Error Number Four

In its fourth assignment of error, LSU contends that the trial court erred in finding that LSU breached Section 11(A)(1)(a) of the employment agreement where the employment agreement contains no requirement that LSU await a final decision by the NCAA to conclude that Mr. Cregg committed NCAA infractions

13

and where Mr. Cregg admitted to conduct that was impermissible under NCAA rules.[6]

At the outset, we note that to the extent LSU argues that the trial court erred in finding that it breached Section 11(A)(1)(a), LSU mis-frames the purported error. The trial court did not find that LSU breached Section 11(A)(1)(a). Instead, the trial court found, and expressly stated, that LSU terminated Mr. Cregg **without** cause as contemplated by Section 11(B)(1).[7] Section 11(A)(1) provides numerous bases which support a finding of termination for "cause," one of which, Section 11(A)(1)(a), relates to the commission of a Level I or II violation of NCAA bylaws or other rules violation. However, this section defining cause does not obligate LSU in any way. However, Section 11(A)(3) does obligate LSU to determine cause in a manner that is neither arbitrary nor capricious. Moreover, Section 11(A)(3) affords the employee due process, requiring that, prior to termination for cause, the employee be provided with written notice of contemplated termination and a statement of the grounds and facts in support thereof. If LSU claimed cause existed when in fact it did not, we may simply conclude, as did the trial court, that the termination was without cause. We may then conclude, as did the trial court, that LSU was responsible for, and failed to pay, liquidated damages for such termination without cause. Thus, in order to resolve this assignment of error, we must initially determine whether LSU properly found that cause for termination existed as identified in its notice of termination letter.

---

[6]Although Mr. Cregg disputes proper notice as required by Section 11(A)(3) as to termination for cause as defined in Sections 11(A)(1)(i) and 11(A)(1)(q), he does not dispute notice for termination for cause based on Section 11(A)(1)(a).

[7]Section 11(B)(1) provides:

LSU shall have the right to terminate this Agreement without cause upon written notice to EMPLOYEE. In such event, LSU will pay EMPLOYEE liquidated damages, in lieu of any and all other legal remedies or equitable relief as detailed below.

14

Section 11(A) provides that the employment agreement may be terminated for "cause," by LSU, acting through the President, at any time prior to its expiration, upon written notice to the employee. Section 11(A)(1) defines "cause" and sets forth twenty enumerated circumstances which constitute "cause" for termination. The basis relied on by LSU herein to terminate its employment agreement with Mr. Cregg is set forth in Section 11(A)(1)(a), as follows:

> Commission of a Level I or II violation under NCAA bylaws or commission of a material and substantial violation (or repeated Level III and/or IV violations) of other Governing Athletics Regulations, or failing to promptly report any such violation by another person to the President and the Senior Associate Athletic Director for Compliance, or committing a material and substantial violation of any LSU policies, rules, or procedures that are believed or found to be within the scope and/or meet the definition of Governing Athletics Regulations[.]

Applying the principles governing interpretation of contracts set forth above, we now determine whether Section 11(A)(1)(a) requires or contemplates a final decision by the NCAA that its bylaws were violated. Examining the words of the contract herein, we note that "commission" is defined as "[t]he act of committing, doing, or perpetrating; positive doing." Webster's Dictionary of the English Language 203 (Deluxe ed. 1992). The parties agreed to use the language, "commission of a ... violation under NCAA bylaws," without specifying that the commission must be based on a determination by the NCAA. As demonstrated by the testimony adduced at trial, the violation of a bylaw and the NCAA's final determination that a violation occurred do not occur simultaneously and may occur years apart. While the parties could have agreed to allow the NCAA to serve as the arbiter of whether Mr. Cregg committed a violation, they did not choose to do so. In fact, once an allegation of a violation is made, the NCAA employs its own procedure (NCAA Bylaw, Article 19 Infractions Program) to commence an investigation by its enforcement staff prior to making any such determination.

15

In the instant case, the actions of Mr. Cregg, which he candidly acknowledged constituted conduct violative of the NCAA bylaws, occurred in May of 2020. Over two years later, at the time the trial court issued its ruling on August 25, 2022, a decision still had not been issued by the NCAA. Moreover, pursuant to NCAA Bylaw, Article 19, Section 19.5.11, the statute of limitations for allegations of violations is four years from the date the notice of inquiry is provided to the institution or the date the institution notifies the enforcement staff of its inquiries into the matter. Thus, a decision of the NCAA that an infraction occurred may come years after the "commission of a violation" or "act of committing" a violation under the bylaws.

In finding that the employment agreement was terminated without cause, we find the trial court erred in requiring a final decision from the NCAA as a prerequisite to a finding of cause. The clear and explicit words of the agreement, interpreted in a common-sense fashion, provide that cause exists for terminating the employment agreement when an individual or the institution commits a violation under NCAA bylaws – not when the NCAA determines the employee committed a violation.

Importantly, the employment agreement contains no language requiring that the actions that constitute violations under the NCAA bylaws be deemed as such by virtue of a final decision of the NCAA. The record herein establishes that Mr. Cregg's actions were violative of the NCAA bylaws. Any interpretation of the employment agreement language that conditions a finding of cause based on a final decision of the NCAA, which may be rendered years later, when the agreement contains no such requirement is simply nonsensical.

Finding that the trial court erred in its interpretation of Section 11(A)(1)(a) of the employment agreement, we find merit to this assignment of error. Because we find LSU provided sufficient notice of its contemplated termination of the

16

employment agreement for cause as defined in Section 11(A)(1)(a), by virtue of Coach Orgeron's June 2, 2021 letter to Mr. Cregg, we find LSU terminated the employment agreement with Mr. Cregg for cause and reverse the judgment of the trial court.[8]

## Answer to Appeal

Our resolution of LSU's assignments of error above renders moot the assignments of error concerning an award of consequential damages and evidentiary challenges to evidence submitted in support of LSU's motion for new trial urged by Mr. Cregg in his answer to appeal. Mr. Cregg contends in his remaining assignment of error that the trial court erred in failing to admit and consider "certain pieces of evidence proffered by [Mr. Cregg]." Although Mr. Cregg does not identify the evidence he contends was wrongly excluded, we note that the record before us contains one proffer by Mr. Cregg, which is an amendment to an employment agreement between LSU and Frank W. "Will" Wade. If, in fact, this is the evidence that Mr. Cregg contends was wrongly excluded, Mr. Cregg does not explain how or why the evidence was wrongly excluded. Because Mr. Cregg has not briefed this assignment of error, we are constrained to consider it abandoned and are precluded from addressing it herein. See Uniform Rules - Courts of Appeal, Rule 2-12.4(B)(4); In re Interdiction of Cockerton, 2021-1316 (La. App. 1st Cir. 4/8/22), 341 So. 3d 834, 838-840; Succession of Poole, 213 So. 3d 18, 26. Accordingly, Mr. Cregg's answer to appeal is denied.

## CONCLUSION

Based on the above and foregoing reasons, the September 8, 2022 judgment of the trial court finding the employment agreement was terminated without cause

---

[8]Considering our finding herein that LSU terminated the employment agreement with cause in accordance with the employment agreement, we pretermit discussion of LSU's remaining assignments of error.

17

and awarding Mr. Cregg liquidated damages is reversed in its entirety. Mr. Cregg's motion to dismiss and alternative answer to appeal is denied. Costs of this appeal are assessed to the plaintiff/appellee, James Cregg.

**REVERSED.**